## UNITED STATES EX REL. NESS *v.* FISHER, SECRETARY [1] OF THE INTERIOR.

### ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 66. Argued November 15, 1911.—Decided March 11, 1912.

Congress has constituted the Land Department, under the supervision and control of the Secretary of the Interior, a special tribunal with *quasi* judicial functions, to which is confided the execution of the laws regulating the disposal of the public lands.

A decision of an executive officer, made in the discharge of a duty imposed by such a law, and involving the exercise of judgment and discretion, may not be reviewed by mandamus, nor can he be compelled by that means to retract his decision so made and to give effect to another not his own and having his approval.

The Secretary of the Interior made a decision that under § 2 of the Timber and Stone Act of June 3, 1878, 20 Stat., 89, c. 151, the statement that the land is unfit for cultivation, valuable chiefly for its timber, uninhabited, and contains no mining or other improvements, must be made upon the personal knowledge of the applicant, and not upon information and belief, and the Court of Appeals held that this decision was right, and on that ground refused mandamus to review it; this court affirms the judgment, but without examining the merits of the question, and solely on the ground that the decision of the Secretary is one involving the exercise of judgment and discretion of an executive officer which cannot be reviewed by mandamus.

That no writ of error or appeal lies in such a case by which the decision of the Secretary of the Interior can be reviewed, furnishes no ground for awarding mandamus.

33 App. D. C. 302, affirmed.

THE facts, which involve a claim under the Timber and Stone Act of 1878, and the power of the court to control the decision of the Secretary of the Interior in regard thereto by mandamus, are stated in the opinion.

[1] Originally brought against James R. Garfield, Secretary of the Interior, and by successive orders continued against his successors, Richard A. Ballinger and Walter L. Fisher.

*Mr. Samuel Herrick,* with whom *Mr. S. P. Ness* was on the brief, for plaintiff in error:

The timber and stone law does not require, either directly or indirectly, that an applicant thereunder shall have personally inspected the land. *Adams* v. *Church,* 193 U. S. 509; *Williamson* v. *United States,* 207 U. S. 425, 462; *Hoover* v. *Salling,* 110 Fed. Rep. 43.

The departmental regulation operates to destroy rights conferred by an act of Congress, at least to the extent of a large portion of the population. *Hoover* v. *Salling,* 110 Fed. Rep. 43.

The regulation is especially unwise and unjust as applied to the facts in the present case.

The Interior Department has not been uniform in its construction of the law, notwithstanding the finding made by the District of Columbia Court of Appeals. Although the Interior Department has contended in the present case, and the court below has found, that this construction of the timber and stone law has been uniformly followed for a number of years, the reported decisions of that department show the contrary. See cases *Gardner,* 16 L. D. 560; *McManus,* 29 L. D. 653; *Lewis* v. *Shaw,* 70 Fed. Rep. 289.

The Interior Department has deliberately refused to follow the opinion of a Federal court upon the point involved. *Hoover* v. *Salling, supra; Featherstone Case,* 32 L. D. 632; *United States* v. *Wood,* 70 Fed. Rep. 485; *Robnett* v. *United States,* 169 Fed. Rep. 778.

Thus two United States Circuit Courts of Appeal have ruled contrary to the opinion of the District of Columbia Court in the *Wood Case,* and in one of these instances the question at issue was precisely the same as in the *Wood Case.*

The departmental construction of the law would have no effect upon indictments for perjury.

The argument advanced by the Interior Department

to the effect that the construction of the law contended for by appellant would result in making it exceedingly difficult to secure conviction for perjury on the ground of false statements in the preliminary application is untenable.

There would be no object in committing perjury with respect to the declaratory statement, since such statement confers no title to the land nor even an equitable claim. *Campbell* v. *Weyerhauser*, 161 Fed. Rep. 333; *Board of Control* v. *Torrence*, 32 L. D. 472; *Charles O. Deland*, 36 L. D. 18.

There would be no advantage gained by filing such an application, because publication of notice must be made immediately thereafter and failure to submit proof on the day advertised results in the loss of all right and claim whatsoever. *Curtis*, 33 L. D. 265; *White*, 33 L. D. 285.

This case should not be decided as one involving the difficulty or facility of proving a crime, but rather as one involving a departmental regulation changing the terms of a law and depriving many citizens of rights granted them by statute.

The preliminary statement is analogous to the initial proceedings in a court of chancery rather than to those under special statutory proceedings. *Williamson* v. *United States*, 207 U. S. 459.

The District Court of Appeals cites six decisions of the state courts. In all cases it was held that the affidavit might be made not only by the party himself, but by his attorney or agent, so that in reality they support contentions of defendant in error.

The court below has evidently overlooked entirely the fact that in her affidavit relator set forth the source of her information and belief, and likewise accompanied it by the affidavit of her agent, an expert woodsman, executed upon personal knowledge. *O'Neill* v. *Glover*, 5 Gray, 144, 156.

Any requirement is inconsistent with the act which imposes upon the applicant a condition not required by the law, and not necessary in order to hold the applicant to a compliance with the law.

Such requirements as this have caused considerable dissatisfaction with the Government throughout the public land States, and have often resulted in retarding the development of unsettled portions of the country.

The Interior Department is not vested with jurisdiction to change or to add to positive statutes in order to further its own policy; on the contrary, it should merely administer the laws as enacted by Congress.

*Mr. Assistant Attorney General Knaebel* for defendant in error:

The relator did not comply with the statute.

By express provision of § 2 it is the "person desiring to avail himself of the provisions of this act" who is required to file the written statement. All of the matters of proof specified in § 2 are in clearest terms required to be set forth in the statement itself. No additional witness is. mentioned. No substitution by agent is allowed. It is entirely manifest that all of the statements of fact for which this statement calls must come from the applicant and be vouched for by his own oath.

As the mere filing of the statement at once results not only in the withdrawal of the land from possible acquisition by others, but also in the acquisition by the applicant of an alienable right, *Williamson* v. *United States*, 207 U. S. 425, 450; *United States* v. *Biggs*, 211 U. S. 507, 520, it was but ordinary prudence for Congress to require beforehand definite and reliable assurance of the existence of these material matters upon which the applicability of the statute is made to depend. *United States* v. *Wood*, 70 Fed. Rep. 485.

The same view was taken in the Circuit Court for the

Western District of Wisconsin. · *Hoover* v. *Salling*, 102 Fed. Rep. 716.

The Land Department has always construed the act as requiring the facts concerning the physical character and condition of the land to be set forth in the statement directly and not upon the mere information and belief of the applicant, conceding, of course, as the statute expressly permits, that no more than his belief· need .be averred on the subject of minerals. See Circular of Instructions of Aug. 13, 1878, Copp's Public Land Laws of 1875–1882, p. 1456; General Circular of Oct. 1, 1880, Copp, *ibid*, p. 277, regulations, p. 302, form of affidavit; Circular of July 16, 1887, and form of affidavit, 6 L. D. 114, 117; General Circular of Jan. 25, 1904, p. 41; see also 14 L. D. 436; 29 L. D. 653.

Concerning the force to be attributed· to a continuous administrative construction like this, there can·be no possible question after the numerous decisions of this court dealing directly with the subject. Unless the construction be clearly erroneous, it should be adopted, even though in its absence the· courts .might be disposed to construe the statute differently. *United States* v. *Moore*, 95 U. S. 760, 763; *Hastings, &c., R. Co.* v. *Whitney*, 132 U. S. 357, 366; *United States* v. *Hammers*, 221 U. S. 220, 228. *Hoover* v. *Salling*, 110 Fed. Rep. 43, is the only instance in which the correctness of the departmental construction has· ever been seriously questioned.

*Robnett* v. *United States*, 196 Féd. Rep. 778, follows *Hoover* v. *Salling* to the extent of holding that the express statements that· the applicant has personally examined the land and has personal knowledge concerning it, which the statute does not in terms require, cannot be made the basis of a perjury prosecution under § 2. It does not decide that a statement made on mere information and belief would be a compliance with that section.

. Mandamus does not lie in this case, and the case should

have been dismissed below for lack of jurisdiction. *Roberts* v. *Valentine*, 13 App. D. C. 38, 46; *Roberts* v. *United States*, 176 U. S. 221, 231, do not apply, but see *United States* v. *Black*, 128 U. S. 40, by which this case is controlled.

Mandamus will not issue unless the duty sought to be enforced be plain and positive; it must be clearly prescribed and enjoined by the law. Merrill on Mandamus, § 57; *International Contracting Co.* v. *Lamont*, 155 U. S. 303, 308; *Ex parte Cutting*, 94 U. S. 14, 19; *Redfield* v. *Windom*, 137 U. S. 636, 644.

The Land Department is a special tribunal constituted by law for the express purpose of administering the statutes relating to the disposition of the lands and therein of deciding all questions and controversies arising under them. *Knight* v. *Land Association*, 142 U. S. 161, 181; *Riverside Oil Co.* v. *Hitchcock*, 190 U. S. 316, 324.

The responsibility as well as the power rests with the Secretary, uncontrolled by the courts. *Kimberlin* v. *Commission*, 104 Fed. Rep. 653; *Brown* v. *Hitchcock*, 173 U. S. 473, 476; *Oregon* v. *Hitchcock*, 202 U. S. 60, 68.

The case of *Garfield* v. *Goldsby*, 211 U. S. 249; *Noble* v. *Union River Logging Railroad Co.*, 147 U. S. 165, and *American School of Magnetic Healing* v. *McAnnulty*, 187 U. S. 94, have no possible application here. In each of those cases the action complained of was *ultra vires*—entirely beyond the scope of the authority of the official performing it, and tended, in addition, to destroy or injure vested property rights.

This case approaches closely, if indeed it be not clearly in principle, an action against the United States. *Oregon* v. *Hitchcock, supra; Louisiana* v. *Garfield*, 211 U. S. 70; *Conley* v. *Ballinger*, 216 U. S. 84.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was a petition, in the Supreme Court of the District

of Columbia, for a writ of mandamus to compel the Secretary of the Interior to accept, as conforming to the Timber and Stone Act of June 3, 1878, 20 Stat. 89, c. 151, an application to purchase under that act 160 acres of public land in the Roseberg, Oregon, land district. The respondent answered, but the answer was held insufficient upon demurrer, and judgment was entered awarding the writ as prayed. An appeal to the Court of Appeals resulted in a reversal of the judgment, with a direction that the petition be dismissed, 33 App. D. C. 302, and that ruling is now here for review. Briefly stated, the material facts are these: Being desirous of purchasing the land under the Timber and Stone Act, the relator, Mary S. Ness, filed in the proper local land office a written application, which fully conformed to the statutory requirements, unless it was objectionable in that it disclosed that she had not personally examined the land and that her statement that it was unfit for cultivation, valuable chiefly for its timber, uninhabited and contained no mining or other improvements was made upon information and belief and not upon personal knowledge. The register and receiver ruled that the application was objectionable in that regard and therefore rejected it, subject to her right to appeal. Successive appeals by her to the Commissioner of the General Land Office and the Secretary of the Interior resulted in an affirmance of the ruling of the local officers, the decision of the Secretary being adhered to upon a motion for review. Soon after the act was passed it was construed by the Land Department as requiring that in applications thereunder the statement respecting the character and condition of the land be made upon the personal knowledge of the applicant, save in the particulars which the act declares may be stated upon belief, and it was because of this construction, disclosed in repeated decisions of the Secretary of the Interior and in the regulations issued under the act (see 6 Land Dec. 114; 11 Land.

Dec. 599; 32 Land Dec. 631), that this application was rejected. After its final rejection, that is, after the decision of the Secretary on the motion for review, one William A. Taylor made application at the local land office to purchase the land under the same act, and his application, which appeared to be in conformity with the statutory requirements, was accepted by the local officers and was being carried to final entry when this petition and the answer were filed.

The answer concluded by alleging, in substance, that the respondent was the head of the Land Department, to which the law committed the administration of the Timber and Stone Act and other public land laws; that the duty of determining whether the relator's application conformed to the statutory requirements was not merely ministerial, but involved the exercise of judgment and discretion; that to compel him to accept that application would be to control his judgment and discretion, and to require him to disregard his own decision, in a matter falling within his lawful authority, and that a writ of mandamus could not be used to that end.

Section 2 of the act reads as follows:

"That any person desiring to avail himself of the provisions of this act shall file with the register of the proper district *a written statement* in duplicate, one of which is to be transmitted to the General Land Office, designating by legal subdivisions the particular tract of land he desires to purchase, *setting forth* that the same is unfit for cultivation, and valuable chiefly for its timber or stone; that it is uninhabited; contains no mining or other improvements, except for ditch or canal purposes, where any such do exist, save such as were made by or belonged to the applicant, nor, *as deponent verily believes,* any valuable deposit of gold, silver, cinnabar, copper, or coal; that deponent has made no other application under this act; that he does not apply to purchase the same on speculation,

but in good faith to appropriate it to his own exclusive use and benefit; and that he has not, directly or indirectly, made any agreement or contract, in any way or manner, with any person or persons whatsoever, by which the title which he might acquire from the government of the United States should inure, in whole or in part, to the benefit of any person except himself; which statement must be verified *by the oath of the applicant* before the register or the receiver of the land office within the district where the land is situated; and if any person taking such oath shall swear falsely in the premises, he shall be subject to all the pains and penalties of perjury, and shall forfeit the money which he may have paid for said lands, and all right and title to the same; and any grant or conveyance which he may have made, except in the hands of *bona fide* purchasers, shall be null and void."

The Secretary's decision, rejecting the relator's application, was not arbitrary or capricious, but was based upon a construction of § 2 which was at least a possible one, had long prevailed in the Land Department, had been approved in *United States* v. *Wood,* 70 Fed. Rep. 485, and *Hoover* v. *Salling,* 102 Fed. Rep. 716, and has since been sustained by the Court of Appeals in the present case. True, a different construction had been adopted in *Hoover* v. *Salling,* 110 Fed. Rep. 43, and has since been followed in *Robnett* v. *United States,* 169 Fed. Rep. 778, but this, instead of indicating that the Secretary's decision was arbitrary or capricious, illustrates that there was room for difference of opinion as to the true construction of the section, and that to determine whether the relator's application conformed thereto necessarily involved the exercise of judgment and discretion.

So, at the outset we are confronted with the question, not whether the decision of the Secretary was right or wrong, but whether a decision of that officer, made in the discharge of a duty imposed by law and involving the

exercise of judgment and discretion, may be reviewed by
mandamus and he be compelled to retract it, and to give
effect to another not his own and not having his approval.
The question is not new, but has been often considered by
this court and uniformly answered in the negative.
*Decatur* v. *Paulding,* 14 Pet. 497, 515; *United States ex rel.
Tucker* v. *Seaman,* 17 How. 225, 230; *Gaines* v. *Thompson,*
7 Wall. 347; *Litchfield* v. *Register and Receiver,* 9 Wall.
575; *United States ex rel. McBride* v. *Schurz,* 102 U. S. 378;
*United States ex rel. Dunlap* v. *Black,* 128 U. S. 40, 48;
*Riverside Oil Co.* v. *Hitchcock,* 190 U. S. 316, 324. Original
discussion being foreclosed by these cases, we will merely
quote from two of them to illustrate the reasoning upon
which they proceed. In the *Decatur Case* it was held that
mandamus could not be awarded to compel the head of
one of the executive departments to allow a claim, under
one construction of a resolution of Congress, which he
had disallowed under another construction, the court
saying: "The duty required by the resolution was to be
performed by him as the head of one of the executive
departments of the government, in the ordinary discharge
of his official duties. In general, such duties, whether
imposed by act of congress or by resolution, are not mere
ministerial duties. The head of an executive department
of the government, in the administration of the various
and important concerns of his office, is continually re-
quired to exercise judgment and discretion. He must
exercise his judgment in expounding the laws and resolu-
tions of congress, under which he is from time to time
required to act. . . . If a suit should come before
this court, which involved the construction of any of these
laws, the court certainly would not be bound to adopt the
construction given by the head of a department. And if
they supposed his decision to be wrong, they would, of
course, so pronounce their judgment. But their judgment
upon the construction of a law must be given in a case in

which they have jurisdiction, and in which it is their duty to interpret the act of congress, in order to ascertain the rights of the parties in the cause before them. The court could not entertain an appeal from the decision of one of the secretaries, nor revise his judgment in any case where the law authorized him to exercise discretion or judgment. Nor can it by mandamus, act directly upon the officer, and guide and control his judgment or discretion in the matters committed to his care, in the ordinary discharge of his official duties. . . . The interference of the courts with the performance of the ordinary duties of the executive departments of the government, would be productive of nothing but mischief; and we are quite satisfied that such a power was never intended to be given to them." And in the *Riverside Oil Co. Case*, where it was sought by mandamus to compel the Secretary of the Interior to depart from a decision of his, to the effect that a forest reserve lieu-land selection must be accompanied by an affidavit that the selected land was non-mineral in character and unoccupied, it was held that his judgment and discretion could not be thus controlled, it being said (p. 324): "Congress has constituted the Land Department, under the supervision and control of the Secretary of the Interior, a special tribunal with judicial functions, to which is confided the execution of the laws which regulate the purchase, selling and care and disposition of the public lands. . . . Whether he decided right or wrong, is not the question. Having jurisdiction to decide at all, he had necessarily jurisdiction, and it was his duty to decide as he thought the law was, and the courts have no power whatever under those circumstances to review his determination by mandamus or injunction. The court has no general supervisory power over the officers of the Land Department, by which to control their decisions upon questions within their jurisdiction. If this writ were granted we would require the Secretary of the Interior to

repudiate and disaffirm a decision which he regarded it his duty to make in the exercise of that judgment which is reposed in him by law, and we should require him to come to a determination upon the issues involved directly opposite to that which he had reached, and which the law conferred upon him the jurisdiction to make. Mandamus has never been regarded as the proper writ to control the judgment and discretion of an officer as to the decision of a matter which the law gave him the power and imposed upon him the duty to decide for himself. The writ never can be used as a substitute for a writ of error. Nor does the fact that no writ of error will lie in such a case as this, by which to review the judgment of the Secretary, furnish any foundation for the claim that mandamus may therefore be awarded. The responsibility as well as the power rests with the Secretary, uncontrolled by the courts."

The relator seems to believe that *Roberts* v. *United States*, 176 U. S. 221, and *Garfield* v. *Goldsby*, 211 U. S. 249, in some way qualify the rule so stated; but this is a mistaken belief. Both cases expressly recognize that rule and neither discloses any purpose to qualify it. In the former the duty directed to be performed was declared to be "at once plain, imperative, and entirely ministerial." And in the latter the writ was awarded to compel the respondent to erase and disregard a notation which he arbitrarily and unwarrantably had caused to be made upon a public record, and which beclouded the relator's right to an Indian allotment.

We conclude that the decision of the respondent in the present case was not arbitrary or merely ministerial, but made in the exercise of judgment and discretion conferred by law and not controllable by mandamus, and therefore that the Court of Appeals rightly directed that the petition be dismissed.

*Judgment affirmed.*