# UNITED STATES EX REL. CHAMPION LUMBER COMPANY v. FISHER, SECRETARY OF THE INTERIOR.

### PETITION FOR WRIT OF ERROR TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

Submitted January 27, 1913.—Decided February 24, 1913.

Under subd. 5 of § 250 of the Judicial Code of 1911 a final judgment of the Court of Appeals of the District of Columbia can only be reviewed by this court in cases where the validity of any authority exercised under the United States, or the existence or scope of any power or duty of any officer of the United States, is drawn in question.

The meaning of the phrase "drawn in question" as it occurs in § 250 of the Judicial Code is the same as in § 709, Rev. Stat.; § 5 of the Circuit Court of Appeals Act, and other statutes regulating territorial appeals.

A statute of the United States authorizing an officer to act in a certain manner under certain conditions is not drawn in question nor is the scope or validity of authority of the officer acting thereunder drawn in question, simply because there is a controversy as to whether the specified conditions do or do not exist.

Where the Secretary of the Interior refused to issue a patent because a protest was pending, the denial of a petition for a writ of mandamus

' directed to him to issue the patent on the ground that there was no protest, does not draw in question the validity or scope of his au- .thority but only the question of fact as to existence of a protest and there is no jurisdiction in this court under § 250 of the Judicial Code to review the judgment.

Writ of error to review 40 Wash. Law Reporter, 780, denied.

THE facts, which involve the construction of § 250 of the Judicial Code of 1911 and the jurisdiction of this court to review judgments of the Court of Appeals of the District of Columbia, are stated in the opinion.

*Mr. Patrick H. Loughran* for petitioner.

*The Solicitor General* and *Mr. Assistant Attorney General Cobb* in opposition.

MR. JUSTICE DAY delivered the opinion of the court

This is a petition for the allowance of a writ of error to the Court of Appeals of the District of Columbia to review the judgment of that court affirming the judgment of the Supreme Court of the District of Columbia, dismissing the petition of the Champion Lumber Company against the Secretary of the Interior and the Commissioner of the General Land Office.

It appears that on April 26, 1910, a petition was filed by the petitioner in the Supreme Court of the District of Columbia praying for a writ of mandamus against the Secretary of the Interior and the Commissioner of the General Land Office to issue a patent for the land hereinafter referred to. The grounds of the petition were that the Lumber Company was the owner of certain lands which had been finally entered under the homestead laws by one Lucy Johns, from whom the petitioner derived title; that the only authority left in the Land Department on the facts set forth was to issue a patent for the land,

and further that the ruling of the Secretary of the Interior and the Commissioner of the General Land Office that a protest, made within two years from the date of the issuance of the receiver's receipt, was pending, whereby the patent was withheld in accordance with the provisions of § 7 of the act of March 3, 1891 (26 Stat. 1095, 1098, c. 561), was an arbitrary and capricious ruling, made without legal authority. The respondents answered and denied the allegations of the petition in this respect, and averred the pendency of a protest which justified the holding up of the patent under the provisions of the statute. The case was tried upon an agreed statement of facts, of which the following is an abridgment:

On September 17, 1897, Lucy Johns made entry under the homestead laws at Jackson, Mississippi, of certain land subject to entry, the papers showing that she was qualified to make the entry, which showing has not been questioned; on September 24, 1902, she having made *prima facie* proof of compliance with the requirements of the homestead laws, final certificate and receipt were issued to her, and the proof was forwarded to the Commissioner of the General Land Office at Washington during October of that year. On January 15, 1903, she conveyed all her interest in the entry to the petitioner, which subsequently conveyed it to one Hines, who later conveyed it back to the petitioner. On November 19, 1902, a special agent of the General Land Office named Hammer wrote the Commissioner that he had reason to believe that ninety per cent. of the proofs in the territory where petitioner's land is situated were fraudulent, and that he had under investigation certain entries, including the one in question, and requested that all patents be withheld until a full report was made; on November 28, 1902, Hammer informed the Commissioner that the investigation so far made had disclosed flagrant frauds, and renewed his request to withhold patents to such lands, and on

December 13th of that year the Commissioner directed the register and receiver at Jackson to suspend action on commutations and proofs until Hammer had reported; and on June 24, 1904, Hammer, in response to a letter from the Commissioner inquiring as to the necessity of an investigation, replied in the affirmative. On May 12, 1906, another special agent reported that the entry of Lucy Johns "was made for speculative purposes, with no attempt to comply with the requirements of the law, and recommended that the entry be canceled on the ground of non-residence, non-cultivation, non-improvement and abandonment." Thereupon the Commissioner directed that a hearing be had. The petitioner moved for a stay of proceedings, claiming that under § 7, *supra*, the entry should be patented without further proceedings. The motion was denied by the Commissioner and this denial affirmed by the Secretary of the Interior, who later denied a motion to review his decision, finding that a protest had been filed against the patent of Lucy Johns' homestead entry within two years from the issuance of the receiver's receipt and holding that the case should proceed to hearing on the special agent's charge.

The Supreme Court of the District of Columbia dismissed the petition. Upon appeal to the Court of Appeals that court affirmed the judgment of the Supreme Court. 40 Washington Law Reporter, 780. In the course of the opinion the Court of Appeals said (p. 781):

"Every point advanced by appellant in this case is, in our view, settled by the following very recent decisions: *Fisher* v. *Grand Rapids Timber Co.,* 37 App. D. C. 436; *Ness* v. *Fisher,* 223 U. S. 683; *McKensie* v. *Fisher,* 39 App. D. C. 7. In *Fisher* v. *Grand Rapids Timber Co.,* which involved the interpretation of the very statute upon which appellant here relies, this court, speaking through Mr. Justice Van Orsdel, said: 'While it is true that ar-

bitrary power resides nowhere in our system of government, and while the supervisory authority vested in the Secretary of the Interior and the Commissioner of the General Land Office over the disposition of the public lands is neither unlimited nor arbitrary, yet the question here presented as to whether or not the communication and order amounted to a protest, which we regard as exceedingly close, was one clearly within the power of the Commissioner to decide. To say that he was mistaken would require us to review a matter exclusively confided by law to his discretion and judgment. This proceeding will not admit of such a review.'

"The communications of Special Agent Hammer respecting this entry were made within the two years contemplated by said act of March 3, 1891, as was the communication of June 18, 1904, from the Commissioner to said agent. It is apparent that these communications resulted in the withholding of a patent; in other words, that the Commissioner regarded the right to that patent as dependent upon the outcome of the investigation which was to ensue. The subsequent decision of the Secretary that what was done within the two-year period constituted a protest against the patenting of the entry, was not arbitrary or capricious, but was based upon evidence; and the sufficiency of that evidence was for his and not our determination."

The writ of error is asked for under § 250 of the Judicial Code, which provides:

"SEC. 250. Any final judgment or decree of the court of appeals of the District of Columbia may be reëxamined and affirmed, reversed, or modified by the Supreme Court of the United States, upon writ of error or appeal, in the following cases:

\*      \*      \*      \*      \*      \*      \*      \*

"Fifth. In cases in which the validity of any authority exercised under the United States, or the existence or

scope of any power or duty of an officer of the United States is drawn in question."

The case therefore to be appealable to this court from the Court of Appeals of the District of Columbia must be one in which the validity of the authority exercised or the existence or scope of the authority of the officer named is drawn in question.

"Drawn in question" is a phrase long used in other statutes of the United States regulating appellate jurisdiction. It is found in § 709 of the Revised Statutes, governing appeals from state courts to this court. It is in the fifth section of the Circuit Court of Appeals Act of March 3, 1891 (26 Stat. 826, 828, c. 517). It is in the statute regulating territorial appeals, (March 3, 1885, 23 Stat. 443, c. 355). The meaning of this phrase has been the subject of frequent consideration in this court, and it is unnecessary to review the numerous cases in which it has been interpreted.

As we have said, it is in the Circuit Court of Appeals Act, which provides that cases may be brought directly to this court from the Circuit Court in which, among other things, the validity or construction of any treaty made under the authority of the United States is drawn in question. In *Muse* v. *Arlington Hotel Co.*, 168 U. S. 430, in considering whether the provisions of a certain treaty were drawn in question, so far as the validity or construction thereof was concerned, with a view to the exercise of the appellate jurisdiction of this court, Mr. Chief Justice Fuller, delivering the opinion of the court, reviewed the cases in this court and stated as the conclusion of the matter that in order to involve the validity or construction of a treaty "some right, title, privilege or immunity dependent on the treaty must be so set up or claimed as to require the Circuit Court to pass on the question of validity or construction in disposing of the right asserted." In *Pettit* v. *Walshe*, 194 U. S. 205, 216, the construction of a

treaty was held to be drawn in question where the petition for a writ of *habeas corpus* and the warrant under which the accused was arrested referred to the treaty, and the court below proceeded on the ground that the determination of the questions involved in the case depended in part upon the meaning of certain provisions of that treaty, these provisions having been duly brought to the attention of the court. It has also been held that the validity of a statute of the United States or authority exercised thereunder is drawn in question when the existence or constitutionality or legality of such law is denied and the denial forms the subject of direct inquiry in the case. *United States* v. *Lynch*, 137 U. S. 280; *Linford* v. *Ellison*, 155 U. S. 503; *Snow* v. *United States*, 118 U. S. 346, 353; *McLean* v. *R. R. Co.*, 203 U. S. 38.

In clause five of § 250, under consideration, the added ground of appeal is given if the existence or scope of any power or duty of an officer of the United States is drawn in question. Within the meaning of this statute, was any such validity or existence or scope of authority drawn in question? It appears that the petitioner contended that no protest was pending in the Department which could rightfully justify the withholding of the patent. The officers of the United States took issue upon this allegation, and the Court of Appeals decided that there was testimony before the Secretary authorizing the exercise of the discretion conferred by law to withhold the patent, and upon that ground affirmed the decision, refusing the writ. The case was therefore submitted and decided upon the issue whether the action of the Secretary was justified in the exercise of his lawful discretion because of the facts disclosed in the record. The petitioner did not challenge, nor did the court pass upon, the validity of any authority exercised under the United States, nor was the existence or extent of the authority or duty of an officer of the United States drawn in question in the sense in which it is

used in the statute, that is, brought forward and made a ground of decision. The statutes under which the officers of the United States acted were concededly valid, and the authority exerted was lawful and within the powers of the officers, if the facts justified their action. The petitioner's real attack upon the action of the Secretary and Commissioner was because the facts shown did not warrant the exercise of the power given by law. The decision of that issue, upon which it is clear the case turned, neither involved nor decided the questions which make the case appealable to this court under the fifth clause of § 250 of the Judicial Code.

*It follows that the petition for writ of error must be denied.*