# KEETOOWAH SOCIETY *v.* LANE.

---

INDIANS; CHEROKEE FREEDMEN; OFFICERS; MANDAMUS.

1. The rights of Cherokee freedmen under article 9 of the treaty of 1866 between the United States and the Cherokee Nation, providing that they shall have all the rights of native Cherokees, include participation in the lands and funds of the Nation.

2. The Secretary of the Interior has jurisdiction to determine the question as to the right of Cherokee freedmen to participate in the lands and funds of the Cherokee Nation, under article 9 of the treaty of 1866 between the United States and the Cherokee Nation.

3. A decision by the Secretary of the Interior as to the right of Cherokee freedmen to participate in the lands and funds of the Cherokee Nation, under article 9 of the treaty of 1866 between the United States and the Cherokee Nation, is discretionary, and not merely ministerial so as to be controllable by mandamus.

No. 2538.    Submitted December 2, 1913.    Decided January 5, 1914.

HEARING on an appeal by the plaintiffs from a decree of the Supreme Court of the District of Columbia sustaining a demurrer to a bill to enjoin defendant, the Secretary of the Interior, from allotting lands to freedmen Cherokees, and from distributing to them funds of which plaintiffs claimed to be the exclusive owners.        *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree in the supreme court of the District sustaining appellee's demurrer and dismissing appellants' bill, wherein they sought to enjoin Franklin K. Lane,

the Secretary of the Interior, from allotting lands to freedmen Cherokees, and from distributing to such freedmen funds of which the appellants claim to be exclusive owners.

The suit was instituted by appellants, the Keetoowah Society, a corporation, and by certain named individuals for themselves and on behalf of all Cherokees by blood enrolled for allotment as of September 1, 1902. The purpose of the bill was to test the right of Cherokee freedmen to participate in the lands and funds of the Cherokee Nation. It is contended that they have no right to an allotment of lands, or to a distributive share of the vested funds of the Nation.

*Mr. C. C. Calhoun* and *Mr. Daniel B. Henderson* for the appellants.

*Mr. Preston C. West, Mr. F. W. Clements, Mr. C. E. Wright,* and *Mr. C. W. Cobb* for the appellee.

Mr. Justice Robb delivered the opinion of the Court:

After the emancipation of Cherokee slaves, a treaty was concluded between the United States and the Cherokee Nation. Act of July 19, 1866, 14 Stat. at L. 799. Article 9 of that treaty provides "that all freedmen who have been liberated by voluntary act of their former owners or by law, as well as all free colored persons who were in the country at the commencement of the Rebellion, and are now residents therein, or who may return within six months, and their descendants, shall have all the rights of native Cherokees."

Not unnaturally the Cherokees accepted this treaty reluctantly, and "subsequently contended that it conferred civil, not property, rights, and passed what was known as the 'blood bill,' by which they sought to exclude all but native Cherokees by blood from participation in a large payment of funds which was about to be made. This gave rise to controversy, and Congress passed an act conferring jurisdiction on the court of claims to settle the matter. The act is entitled, 'An Act to Refer to the

Court of Claims Certain Claims of the Shawnee and Delaware Indians and the Freedmen of the Cherokee Nation, and for Other Purposes.' It was approved Oct. 1, 1890 (26 Stat. at L. 636, chap. 1249). The Cherokee freedmen whose rights were to be determined under the act were those 'who settled and located in the Cherokee Nation under the provisions and stipulations of article 9' of the treaty." *United States ex rel. Lowe* v. *Fisher,* 223 U. S. 95, 56 L. ed. 364, 32 Sup. Ct. Rep. 196.

Again in *Cherokee Nation* v. *Whitmire,* 223 U. S. 108, 56 L. ed. 370, 32 Sup. Ct. Rep. 200, the court, after referring to said article 9, of said treaty of 1866, and to said act of 1890, said: "Under the jurisdictional act, and in accordance with its provisions, suit was brought by the freedmen by their trustee, Moses Whitmire, against the Cherokee Nation and the United States to determine the rights of the freedmen under the treaty. * * * The court decided that under the Cherokee Constitution of 1866 the freedmen became citizens of the Nation equally with the Cherokees, and equally interested in the common property, and equally entitled to share in its proceeds. * * * Appeals were prayed by claimant and defendant, but were withdrawn afterwards by stipulation, and a decree was entered February 3, 1896, as of May 8, 1895. The decree adjudged the rights of freedmen to be as we have hereinabove set out." We here reproduce the second paragraph of said decree: "And it appearing to the court that under the provisions of article 9 of the treaty of July 19, 1866, made by and between the Cherokee Nation and the United States, the said freedmen, who had been liberated by voluntary act of their former owners or by law, and all free colored persons who resided in the Cherokee country at the commencement of the Rebellion and were residents therein at the date of said treaty, or who had returned thereto within six months of said last-mentioned date, and their descendants, were admitted into and became a part of the Cherokee Nation, and entitled to equal rights and immunities, and to participate in the Cherokee national funds and common property in the same manner and to the same extent as Cherokee citizens of Cherokee blood." [30 Ct. Cl. 190.] In the *Whit-*

*mire Case, supra,* the court directed attention to the fact that "Congress accepted the (above) decree as a correct interpretation of article 9 of the treaty as to the rights of Freedmen."

In the *Cherokee Intermarriage Cases,* 203 U. S. 76, 51 L. ed. 96, 27 Sup. Ct. Rep. 29, where intermarried whites claimed the right to share in the lands and funds of the Cherokee Nation in virtue of an alleged citizenship in that Nation derived from intermarriage under Cherokee laws, the court said: "As to the freedmen, their participation in property distribution was secured by the terms of the treaty of 1866 (the result of the Civil War), and of the constitutional Amendments thereupon adopted. * * * The Delawares, the Shawnees, and the freedmen acquired their property rights by the words of treaties." See also *Cherokee Nation* v. *Journeycake,* 155 U. S. 196, 39 L. ed. 120, 15 Sup. Ct. Rep. 55.

In view of these adjudications, we do not think the right of these freedmen to participate in the lands and funds of the Cherokee Nation longer open to question. Moreover, the question whether the freedmen were invested with the property rights here sought to be challenged was within the jurisdiction of the Secretary of the Interior. It is plain, we think, that his decision "was not arbitrary or merely ministerial, but made in the exercise of judgment and discretion conferred by law," and hence was not controllable by mandamus. *United States ex rel. Ness* v. *Fisher,* 223 U. S. 683, 56 L. ed. 610, 32 Sup. Ct. Rep. 356.

Decree affirmed, with costs. *Affirmed.*