**McCARL, Comptroller General, et al.**
**v. MIGUEL.**

No. 5871.

Court of Appeals of the District of Columbia.
Argued May 8, 9, 1933.
Decided June 26, 1933.

Leo A. Rover, John W. Fihelly, R. L. Golze, and Harrell O. Hoagland, all of Washington, D. C., for appellant Comptroller General.

Samuel T. Ansell, Burr Tracy Ansell, and George M. Wilmeth, all of Washington, D. C., for appellee.

William A. Graham and Archibald King, Judges Advocate, U. S. Army, both of Washington, D. C., amici curiæ, for Secretary of War.

Before MARTIN, Chief Justice, and VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

Appellee, after more than thirty years' service in the Philippine Scouts, was retired as master sergeant pursuant to special orders No. 207 of the War Department, dated September 3, 1931, as follows:

"35. Master Sergeant Santos Miguel, R-320883, Service Company, 45th Infantry (PS), will be placed on the retired list at Fort William McKinley, P. I., effective October 31, 1931, and will be sent to his home. The travel directed is necessary in the military service.
"By order of the Secretary of War.
"Douglas MacArthur,
"General, Chief of Staff."

Appellee claims that the retirement order was made by authority of the Act of March 2, 1907, 34 Stat. 1217 (see 10 USCA §§ 947, 980) providing: "That when an enlisted man shall have served thirty years either in the Army, Navy, or Marine Corps, or in all, he shall, upon making application to the President, be placed upon the retired list, with seventy-five per centum of the pay and allowances he may then be in receipt of, and that said allowances shall be as follows. * * *"

Appellee in due course after retirement submitted to an army disbursing officer a voucher for his retired pay and allowances for the month of November, 1931, in the amount of $50.81. The disbursing officer was in doubt whether the payment should be made, and submitted the question to the Comptroller General with a request for an advance opinion as to the legal authority for its payment. The Comptroller General decided that appellee was not entitled to receive retired pay as a soldier in the Army of the United States, and directed the disbursing officer not to pay the voucher. Appellee thereupon instituted proceedings in the court below to require the Comptroller General to return the voucher to the disbursing officer and likewise to compel the Chief of Finance of the Army to pay or cause the same to be duly paid. After the bill was filed in the court below and some preliminary motions disposed of, the Comptrol-

ler General answered the bill. Appellee moved to strike, and this motion was sustained and judgment entered for appellee.

The question we have to determine is whether a mandatory injunction should issue against the Comptroller General directing him to approve and allow credit for payments of retired pay and allowances to a member of the Philippine Scouts at the rate provided by act of Congress to be paid to a retired enlisted man of the Army of the United States. The Comptroller General in his answer denied that there was any fund or appropriation by Congress for payment of retired pay to enlisted men in the Philippine Scouts. He also alleged as an affirmative defense that there was a deficiency of nearly $2,000,000 in the fund appropriated for the pay and allowances of the active forces of the United States Regular Army.

On behalf of appellee it is urged that the order of retirement made by authority of the Secretary of War is a determination of the question that appellee is an enlisted man in the Army of the United States who had served thirty years in the Army and is entitled under the quoted retirement statute to the same proportion of pay as any other retired enlisted man of the Army. In these circumstances appellee insists that his status and compensation have been duly fixed, and that an appropriation has been duly made by Congress to pay the same, and that thus, every fact necessary to entitle him to his retired pay being present, actual payment may not be withheld by any action on the part of the Comptroller General or the Chief of Finance of the Army.

Cases in which the extraordinary writ of mandamus or injunction was asked to require or compel specific action by an executive officer of the government have often been before the courts for judicial consideration and determination. Some of them are Smith v. Jackson, 246 U. S. 388, 38 S. Ct. 353, 62 L. Ed. 788; Roberts, Treasurer, v. United States, 176 U. S. 221, 20 S. Ct. 376, 44 L. Ed. 443; Champion Co. v. Fisher, 227 U. S. 445, 33 S. Ct. 329, 57 L. Ed. 591; U. S. v. Lamont, 155 U. S. 303, 15 S. Ct. 97, 39 L. Ed. 160; Dunlap v. Black, 128 U. S. 40, 9 S. Ct. 12, 32 L. Ed. 354; Board of Commissioners, etc., v. Aspinwall, 65 U. S. (24 How.) 376, 383, 16 L. Ed. 735; McCarl v. Cox, 56 App. D. C. 27, 8 F.(2d) 669; McCarl v. Pence, 57 App. D. C. 159, 18 F.(2d) 809; United States v. Harsha (C. C. A.) 56 F. 953; Hines v. Cavanagh, 59 App. D. C. 267, 39 F.(2d) 517.

In this case the grounds on which the Comptroller General based his opinion are set out in a letter to the disbursing officer in reply to the latter's request for an advance opinion as to the legality of the proposed payment. In this letter, filed as an exhibit with the answer, the Comptroller General places his refusal to approve the payment on various acts of Congress in relation to the organization of the Philippine Scouts. The first of these statutes is that of February 2, 1901, 31 Stat. 757. In section 36 thereof, the President is authorized to enlist natives of the Philippine Islands for service in the Army, to be organized as scouts with such officers as he shall deem necessary for their proper control, or as troops or companies as authorized by the act for the Regular Army. The act limits the total number of enlisted men in "native organizations" to 12,000. The act also provides that the President shall appoint the commanding officers of the squadrons and battalions thus formed from officers in the Regular Army of the United States, and provides that the pay, rations, and clothing allowances to be authorized for the enlisted men shall be fixed by the Secretary of War, and shall not exceed those authorized for the Regular Army. If, in the opinion of the President, the natives of the Islands shall by their services and character, show fitness for command, the President shall be authorized to appoint them first and second lieutenants, and, when so appointed, they shall have the pay and allowances to be fixed by the Secretary of War not exceeding those of the corresponding grades of the Regular Army.

The second act referred to is the National Defense Act of June 3, 1916, § 22, 39 Stat. 181, in which the existing law in relation to the Philippine Scouts was ordered continued in force and effect, except that by section 26 it is provided that captains and lieutenants of Philippine Scouts who are citizens of the United States shall thereafter be entitled to retirement under the laws governing the retirement of enlisted men of the Regular Army, except that they shall be retired in the grade held by them at the date of retirement, and that officers of Philippine Scouts retired under the provisions of this section shall not form part of the limited retired list now authorized by law.

It will be noticed that these acts, while referring to the organization, etc., of the Philippine Scouts (section 26), are confined to officers thereof.

Next in point of reference is the Act of June 4, 1920, § 26, 41 Stat. 775, where the provision (section 26) with relation to the retirement of officers of the Scouts was re-

pealed, and it was provided: "On July 1, 1920, all officers of the Philippine Scouts on the active list, who are citizens of the United States and are found qualified under such regulations as the President may prescribe, shall be recommissioned in some one of the branches provided for by this Act, and those not so recommissioned shall continue to serve under their commissions as officers of the Philippine Scouts. No further appointments shall be made as officers of Philippine Scouts except of citizens of the Philippine Islands, who may be appointed in the grade of second lieutenant, under such regulations as the President may prescribe. Officers commissioned in the Philippine Scouts shall be subject to promotion, classification, and elimination, as hereinafter prescribed for officers of the Regular Army. Those now on the retired list shall hereafter receive the same pay as a retired second lieutenant of equal service. * · * * Nothing in this Act shall be construed to alter in any respect the present status *of enlisted men* of the Philippine Scouts." Section 22 (41 Stat. 770).

A subsequent act of June 10, 1922, § 17, 42 Stat. 632, likewise conferred on officers and former officers of the Philippine Scouts the status of officers in the regular establishment, but this act, like its predecessor, provided (section 21, 42 Stat. 633) that it should not be construed in any way as changing existing laws or regulations governing pay and allowances for the *enlisted men* of the Philippine Scouts.

The Comptroller General concludes his opinion as follows: "It seems clear from this legislative history that in authorizing the enlistment in the Army of natives of the Philippine Islands to be organized as scouts and when deemed necessary 'as troops or companies as authorized * * * for the Regular Army' that it was not contemplated that any member of such organization of natives of the Philippine Islands should be entitled to retirement, either officers or enlisted men. By section 22 [26] of the Act of June 3, 1916, provision was made for placing on the retired list captains and lieutenants of the Philippine Scouts citizens of the United States under the laws governing the retirement of enlisted men of the Regular Army. This provision for the retirement of officers of the Philippine Scouts has been changed by subsequent legislation, but it has been specifically provided that nothing therein should alter in any respect the present status of enlisted men of the Philippine Scouts. No law has modified the status of enlisted men of the Philippine Scouts as fixed by the act of 1901."

We are of opinion that appellee's claim to retired pay cannot be adjudicated in this proceeding, and that his rights can only be determined in a proper suit or action instituted in the Court of Claims. The basis of this is the rule that mandamus or injunction should not issue in a case of doubtful inference from statutes of uncertain meaning, for in such circumstances the duty sought to be controlled is regarded as involving the character of judgment or discretion. Wilbur v. United States, 281 U. S. 206, 50 S. Ct. 320, 74 L. Ed. 809. The Comptroller General, when applied to by the disbursing paymaster of the Army, was required by law to decide the question of appellee's right to retired pay. The right was regarded as doubtful by the disbursing officer, and, in order to protect himself against a disallowance by the accounting office if payment should ultimately be held not valid, he applied, in accordance with law, to the Comptroller General for an advance opinion. The opinion was given, and once given is binding on the executive branch of the government. Skinner & Eddy Corp. v. McCarl, 275 U. S. 1, 48 S. Ct. 12, 72 L. Ed. 131. The decision of the Comptroller General made under these conditions, while conclusive so far as the executive branch of the government is concerned, is not final in the sense that it is not subject to review in the courts, but the cases in which the courts have interfered by mandamus were cases in which there was no dispute that the petitioners were officers of the United States or creditors of the United States, and in either case that the accounting and disbursing officers had determined they were entitled to their pay or debt and that an appropriation was available in the hands of the defendant from which to make payment.

In such cases the courts are always justified in granting relief, as for instance, where a statute fixes an officer's compensation, as in the case of Judge Jackson of the Panama Canal (Smith v. Jackson, supra) and appropriates money for its payment, and there is no dispute as to the identity of the person petitioning and the office, nor any dispute as to the availability of the appropriation, the disbursing officer or the Comptroller General has no function to perform except the payment of the money, and upon refusal may be compelled to do so by mandamus. But where, in a case like this, there is in good faith a contest on the question whether petitioner is a retired soldier of the Army, or whether, even if he is, his right to pay is fixed by an appropriation with relation to enlisted men "in the Army, Navy, or Marine Corps," or where, as

in this case is stated under oath by the Comptroller, there are no funds available, it is clear, we think, that neither mandamus nor injunction should issue. In every case which we know of in which there is a disputed question of fact itself essential to a determination of the case, or where there is a question of merits to be considered, courts have held that injunction or mandamus is not the proper remedy. Certainly there is on the face of the applicable statutes we have referred to serious doubt whether Congress has placed the enlisted personnel of the Philippine Scouts in the same class as enlisted men of the Regular Army, and, if this is true, then obviously the right to mandamus is not "clear and indisputable" (Board of Commissioners v. Aspinwall, supra), for admittedly there is no direct legislation on the subject.

 Nor do we think the order of retirement directed by the Secretary of War is a conclusive finding of fact of the status of petitioner. So far as appears, it was a routine matter, but, whether routine or not, it was effective only if authorized by law. Congress alone can make appellee a retired soldier of the Army of the United States. The decision of the Comptroller General, however, does not affect the status of petitioner so far as the retirement order is concerned, and that question need not be passed on. The Comptroller General's action affects merely his right to retired pay, and that depends upon whether Congress has provided the right to such retired pay and has made an appropriation accordingly. As to that the Comptroller General, in his capacity as head of the accounting office of the government, has the right of determination, for it is unlawful for any sum to be paid out of the Treasury of the United States except according to law, and the duty of the Comptroller General is primarily to determine that question. We think it is a misconception, therefore, to say that, because of the retirement order of the Secretary, the question of appellee's status may not be inquired into, and we think, in the circumstances we have shown, the Comptroller's decision was binding until reversed or set aside by a proper proceeding in a court having jurisdiction of the controversy and of the parties, and we do not think this is such a proceeding. Denby v. Berry, 263 U. S. 29, 44 S. Ct. 74, 68 L. Ed. 148; U. S. v. Lynch, 137 U. S. 280, 11 S. Ct. 114, 34 L. Ed. 700.

The decree of the lower court will be reversed, and the cause remanded, with instructions to dismiss the bill.

Reversed.