## UNITED STATES ex rel. KANSAS CITY SOUTHERN RY. CO. v. INTERSTATE COMMERCE COMMISSION.

### No. 87607.

District Court of the United States for the District of Columbia.

Feb. 9, 1937.

Samuel W. Moore, Frank H. Moore, and A. F. Smith, all of Kansas City, Mo., and Thomas P. Littlepage, of Washington, D. C., for relator.

Daniel W. Knowlton and E. M. Reidy, both of Washington, D. C., for Interstate Commerce Commission.

Samuel W. Sawyer and John H. Lathrop, both of Kansas City, Mo., and F. W. Clements, of Washington, D. C., for intervener Kansas City Terminal Ry. Co.

Charles H. Woods, R. S. Outlaw, Bruce Scott, Walter McFarland, W. F. Dickinson, and Wallace T. Hughes, all of Chicago, Ill., H. H. Larimore, of St. Louis, Mo., and J. M. Souby, of Omaha, Neb., for interveners Atchison, T. & S. F. Ry. Co. and others.

LUHRING, Justice.

This is a mandamus proceeding wherein the relator, the Kansas City Southern Railway Company, seeks a writ of mandamus to compel the respondent, Interstate Commerce Commission, to take jurisdiction of a complaint filed before it (docket No. 26876) and which the Commission dismissed for want of jurisdiction on November 11, 1935 (Kansas City Southern Ry. Co. v. Kansas City Term. Ry. Co., 211 I.C.C. 291). By leave of court, certain other carriers, being the so-called large users of the Kansas City terminal facilities, intervened as respondents, as did also the Kansas City Terminal Railway Company.

The matter is now before the court upon the amended petition, the answer of the Commission, the answers of the interveners, and the relator's demurrer to said answers.

The proceedings before the Commission, known as docket 26876, presented a situation arising out of the construction of the Kansas City Union Station and other terminal facilities in Kansas City, Missouri-Kansas.

Prior to the year 1906 ten railroads entering Kansas City had used a union depot, and because of the inadequacy of that depot and the public demand for better facilities, these railroads organized the Kansas City Terminal Railway Company, one of the intervening respondents here, as a common carrier railroad with an authorized capitalization of $30,000,000, which was later increased to $50,000,000, and for which stock they subscribed in equal shares.

On June 12, 1909, an agreement was entered into by and between the intervening respondent, Kansas City Terminal Railway Company, the ten lines, and the Illinois Trust & Savings Bank as trustee. This agreement was supplemented January 24, 1910, by the inclusion of the relator, Kansas City Southern Railway Company, on equal terms with the original lines.

The original and supplemental agreements comprise what is known as the operating agreement. As summarized by Mr. Justice Roberts in U. S. v. Interstate Commerce Commission, 294 U.S. 50, 53, 55 S. Ct. 326, 327, 79 L.Ed. 752, this operating agreement, among other things, provides "for the construction, maintenance, and operation of the terminal and its use by the proprietary companies throughout a term of two hundred years; equal ownership of the terminal company's stock; the admittance of other railroads, on equal terms as to ownership of stock and use of the property by consent of two-thirds of the participants not in default under the agreement; issuance and sale of the terminal company's bonds secured by mortgage on its property; payment by each proprietary road of an equal share of taxes and governmental charges of the company and of interest and principal of its mortgage indebtedness; payment of a defaulting railroad's share of these charges by the remaining proprietaries in equal shares; exclusion of any defaulting road from the use of the facilities; the sharing of expenses of maintenance and operation by the using companies in proportion to each one's use."

Coincident with the execution of the operating agreement a stock-trust agreement was executed between the Terminal Company and the ten, now twelve, proprietary lines, and the Pioneer Trust Company of Kansas City. It provided for the transfer of the shares of the Terminal Company's stock and of such further shares as should be offered to and subscribed for by those lines from time to time to the Trust Company, in trust for the purpose of carrying out the provisions of the operating agreement and as security for their performance with provisions against acquisitions of such stock by outside interests.

The new union station was completed and opened for business on November 1, 1914.

Subsequently, the Missouri, Kansas & Texas Railway Company, one of the proprietary companies and a party to the agreements described, went into receivership and most of its railway lines were purchased at a judicial sale by the Missouri-Kansas-Texas Railroad Company. Pursuant to an order of court, allowing it the privilege, the purchasing Railroad Company elected not to become one of the proprietary companies of the Terminal Railway Company as its predecessor had been. On the 10th day of March, 1924, it filed its petition with the Interstate Commerce Commission under paragraph (4) of section 3 of the Interstate Commerce Act (49 U. S.C.A. § 3(4) wherein it sought an order authorizing it to use designated portions of the union passenger station and the freight terminals of the Terminal Railway Company at Kansas City, Missouri-Kansas.

The petition alleged that the terms imposed upon the petitioner for its use of the terminals were unjust, inequitable, and burdensome in that by the operating agreement each of the proprietary lines parties to said agreement is required to pay one-twelfth of the interest and of the taxes, without regard to the extent of the use of the terminal by each such company. That as a small user of the terminal facilities, its payment for interest and taxes is out of proportion to its use.

In that proceeding all the other users of the terminal filed petitions in intervention. Five of these, known as the larger users, opposed the relief sought; the others, small users, in which group the relator here belongs, sought the same relief that the Missouri-Kansas-Texas Railroad Company sought, and also urged that to grant the relief to that company alone would aggravate the situation and unlawfully discriminate against the other users.

After extensive hearings the Commission made and issued its report, dated November 10, 1925 (Missouri-Kansas-Texas R. Co. v. Kansas City Term. Ry. Co., 104 I.C.C. 203), dismissing the petition of the so-called small users, which included the petition of the relator here, on the ground of lack of jurisdiction. Subsequently, a petition for rehearing was denied. Thereafter, the Kansas City Southern Railway Company, who is the relator here, and the Chicago Great Western Railroad Company filed a petition in this court for a writ of mandamus to compel the Commission to assume jurisdiction. This petition was denied, and, on appeal to the Court of Appeals for the District of Columbia, the

judgment of the lower court was affirmed. U. S. v. Interstate Commerce Commission, 63 App.D.C. 215, 71 F.(2d) 336. The judgment of the Court of Appeals was affirmed by the Supreme Court of the United States January 7th, 1935. U. S. v. Interstate Commerce Commission, 294 U.S. 50, 55 S.Ct. 326, 79 L.Ed. 752.

Shortly following the decision in U. S. v. Interstate Commerce Commission, supra, and on February 18, 1935, the Kansas City Southern Railway Company, the relator here, filed its complaint with the Interstate Commerce Commission against the Kansas City Terminal Railway Company, an intervening respondent here, and eleven other railroads which, with the Kansas City Southern, use the station and other terminal facilities at Kansas City, Missouri-Kansas. In this complaint it is alleged in substance that the payment by the complainant of its equal share of annual interest and taxes pursuant to the terms of the operating agreement is unjust, inequitable, and discriminatory in view of the comparatively small use it makes of the terminal facilities, and constitutes an undue prejudice to and burden upon its interstate commerce, and is calculated to seriously impair, if not to destroy, its ability to render adequate and efficient transportation service and will lessen its ability to serve interstate commerce.

The complaint further alleges on information and belief in paragraph 10 " * * * that the public interest requires that the interstate transportation furnished by complainant * * * shall be subject to such reasonable and necessary expenses of operation as are properly attributable thereto, and that neither the complainant nor any other carrier shall be subject to excessive, discriminatory or burdensome costs of operation, however incurred or created, which burden or prejudice the conduct of its interstate transportation, or which tend to disable it from performing its public duties under the law as aforesaid; that the public interest requires any carrier, such as the larger users of the facilities of the Terminal Company, to pay and charge to its own operating costs all expenses fairly, justly and equitably attributable to its own operations, and prohibits it from transferring to any other carrier or carriers * * * such proper, lawful and just expense of operation; that in all inter-carrier contracts allocating or apportioning, in their own discretion, costs

of operation between the parties thereto, and, in particular, in long term contracts such as the one in question, extending over a period of 200 years, the law writes in a term or condition that such contracts are subject to modification or annulment in the exercise of public regulation, as right and justice may require, whenever the effect of such contracts, or the conduct of operation thereunder becomes contrary to or in conflict with the public interest. * ' * * "

It is further alleged that the Commission is clothed with power to remove any undue burden, prejudice, and discrimination, such as imposed by the operating agreement upon the complainant and other small users, and that such power "inheres in the various grants of power made by Congress to the Commission, and particularly in sections 1, 3, 5, 12, 13, 15a and 20 of the Interstate Commerce Act [49 U.S. C.A. §§ 1, 3, 5, 12, 13, 15a, 20]."

The prayer in general is that the Commission enter an order directing the Terminal Company to "cease and desist" from requiring payment from the complainant and the small users of proportions of interest and taxes in excess of or less than those found by the Commission to be just and reasonable, when measured on a user basis.

Cross-complaints, seeking the same relief as may be accorded the complainant, were filed by several of the defendants. The defendant, Kansas City Terminal Railway Company, filed motions to dismiss and pleas to the jurisdiction and in bar and answers to the original and each of the cross-complaints. Others of the defendants filed motions to dismiss and answers to the original and cross-complaints.

The motions to dismiss and pleas to the jurisdiction were based on the grounds (1) that there is no statutory power granted by Congress to grant the relief which the complainants seek; (2) that an interpretation of the Interstate Commerce Act which would authorize the granting of the relief sought would render the act unconstitutional; and (3) that the issues raised by the complainant have already been adjudicated by the Commission in Missouri-Kansas-Texas R. Co. v. Kansas City Term. Ry. Co., 104 I.C.C. 203.

In disposing of the contention of the complainant that "it is the established policy of Congress, as embodied in the Act, to preserve the earning capacity and to conserve▸the financial resources of indi-

vidual carriers to the end that they may provide efficient and economical transportation service, and that in aid of this policy the Commission is vested with authority to prevent or remove unlawful prejudice to, undue burdens upon, or illegal obstructions to their interstate commerce such as those alleged in the complaints," the Commission said: "While the act does disclose a policy of Congress of the nature alleged by complainants, and when this Commission acts in response to some duty imposed or authority created by the act it must act in such manner as to give effect to the legislative purpose, we must reject complainants' contention that we can assume jurisdiction and act to carry out that policy independently of some duty imposed or authority created by the act. We are invested with no roving commission to carry out the policy of Congress; our powers are those delegated to us by the various sections of the Interstate Commerce Act and other acts which define the standards of right and obligation and delegate to us the function of finding the facts, determining the issues, and making the regulations necessary to give effect to those standards. We have hereinabove examined the sections of the act relied upon and found therein no delegation of authority to act upon the state of facts herein presented. Statements of the courts above quoted as to our extensive powers to carry out the legislative intent were made in connection with our exercise of powers under specific provisions of the act. We cannot, in order to carry out what we conceive to be the legislative intent, exercise powers which are neither expressly delegated, nor reasonably necessary in order to effectuate powers which are expressly delegated." 211 I.C.C. 304.

The motions of the defendants were sustained by the Commission on the ground of lack of jurisdiction and the complaints were dismissed. There was an application for a rehearing which was denied.

The petition for mandamus was filed in this court on June 8, 1936. An amended petition was filed September 28, 1936. By this petition, the relator seeks an order directing the Interstate Commerce Commission to set aside and vacate its order of November 11, 1935, dismissing its complaint, and to consider and decide the issues raised by that complaint upon their merits.

The Commission and the interveners filed answers to the relator's amended petition, and the relator demurred to these answers. There is no dispute as to the facts.

The demurrer to the answers raises the question whether the Commission plainly and clearly has jurisdiction to entertain the complaint.

We are not here concerned with the merits of the controversy. It may be conceded that in their application, the terms of the operating agreement impose undue burdens and hardships upon the small user of the terminal facilities, and that it is inequitable to compel them to share equally the taxes and interest charges with the larger user. In disposing of the demurrer the principles of law relating to the remedy by mandamus must be invoked.

The Interstate Commerce Commission is the administrative body created by the Congress for the purpose of regulating interstate commerce. The Commission is clothed with such powers in that respect as are expressly delegated to it or are reasonably necessary in order to effectuate the powers which are so expressly delegated.

Mandamus will not issue where its effect will be to dictate to an officer in the exercise of a discretionary function, or to serve the purpose of a writ of error. Furthermore, where an officer's action involves the exercise of his discretion and judgment in the construction and interpretation of a statute, mandamus will not issue to compel him to act upon one construction rather than another. Decatur v. Paulding, 14 Pet. 497, 10 L.Ed. 559, 609; Gaines v. Thompson, 7 Wall. 347, 19 L.Ed. 62; U. S. ex rel. Dunlap v. Black, 128 U. S. 40, 9 S.Ct. 12, 32 L.Ed. 354; U. S. ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 23 S.Ct. 698, 47 L.Ed. 1074; Ness v. Fisher, 223 U.S. 683, 32 S.Ct. 356, 56 L.Ed. 610; U. S. ex rel. Hall v. Payne, 254 U.S. 343, 41 S.Ct. 131, 65 L.Ed. 295; Wilbur v. U. S., 281 U.S. 206, 207, 50 S.Ct. 320, 74 L.Ed. 809; Interstate Commerce Commission v. New York, N. H. & H. R. Co., 287 U.S. 178, 53 S.Ct. 106, 77 L.Ed. 248.

"Where the duty in a particular situation is so plainly prescribed as to be free from doubt and equivalent to a positive command, it is regarded as being so far ministerial that its performance may be

compelled by mandamus, unless there be provision or implication to the contrary." Wilbur v. U. S., supra, 281 U.S. 206, 218, 219, 50 S.Ct. 320, 324, 74 L.Ed. 809.

■ "If beyond peradventure the act does not confer upon the Commission the power invoked· by a complainant, the writ will not be granted. If on the other hand power ·and authority are plainly found ·in the act, and the Commission erroneously refuses to exercise such power and authority, mandamus is the appropriate remedy to compel that body to proceed and to hear the case upon the merits." U. S. v. Interstate Commerce Commission, supra, 294 U. S. 50, at page 61, 55 S.Ct. 326, 330, 79 L. Ed. 752.

It would unduly prolong this opinion to review the report of the Commission discussing the various sections of the act relied on to justify jurisdiction. Under the heading "Source of Power to Grant Relief Sought," (211 I.C.C. 296) the Commission considered these sections in detail, and concluded that the Congress had failed to delegate authority to it to consider and determine the merits of the complaint.

There is quoted above that part of the report which disclaims any inherent power to grant the relief demanded. The Commission held that it had no "roving commission to , carry out the policy of Congress," but that in the exercise of delegated powers it was required to give effect to such policy.

■ The report of the Commission indicates that "its conclusion was not so clearly erroneous as to call for the exercise of the extraordinary power involved in the issuance of mandamus."

The act does not "beyond peradventure" confer jurisdiction upon the Commission to entertain the complaint and decide it upon the merits. On the contrary, such power and authority are not expressly delegated. The so-called "pervasive spirit of the Act" is of no avail. Therefore, applying the well-settled principles of the law of mandamus, the court is of the opinion that the writ should not issue.

The demurrer to the answers also presents the question of res judicata. The answers relied upon the judgment of this court in U. S. ex rel. Chicago Great Western Railroad Company et al. v. Interstate Commerce Commission, Law No. 82771 on the dockets of this court, which was affirmed by the Court of Appeals for the District of Columbia and by the Supreme Court of the United States, 63 App.D.C. 215, 71 F.(2d) 336, and 294 U.S. 50, 55 S.Ct. 326, 79 L.Ed. 752, cited supra. This litigation had to do with the proceedings instituted before the Commission by the Missouri-Kansas-Texas Railroad Company wherein it sought an order authorizing it to use the union station and terminal facilities of the Terminal Railway Company at Kansas City, Missouri-Kansas. The relator here, among other carriers, intervened in that proceeding. The Commission dismissed the intervening petition of the re-, lator for want of jurisdiction. The relief sought was substantially the same as that demanded by the complainant in the proceeding now under review. There, as in the latter proceeding, the operating agreement was attacked and on substantially the same grounds, that is, in the first case, the right to relief was mainly predicated· upon sections 1 and 3 of the act, whereas in the latter, the complaint relied chiefly upon the alleged power of the Commission to remove burdens upon interstate commerce. In other words, the issue involved in the first case was whether the Commission clearly and beyond peradventure of doubt had power under the act to readjust the payments .of the proprietary companies in disregard of the operating agreement. That is the issue here, notwithstanding that other and additional reasons are now urged in support of the jurisdiction of the Commission.

■ "It is well settled that a final judgment rendered upon the merits of an application for a peremptory writ of mandamus comes within the principle of res judicata, and is a bar to another application for the same writ by the same party under the same circumstances, or to another action involving the same issues and in which the same relief is sought." 34 C.J. § 1173, p. 760.

■ The rule of res judicata not only concludes the questions raised, but also extends to and concludes all questions which could have been raised. 38 C.J. § 726, p. 947.

■ The court is of opinion that the an-, swers setting up res judicata are sufficient.

The demurrer to the answers is overruled.