# MOORE *v.* HEANY.

PATENTS; APPLICATIONS; PARTIES; DUE PROCESS OF LAW; INJUNCTIONS;
FORMER ADJUDICATION; APPEALS.

1. Whether an applicant for a patent has assigned his interest in his in-
vention or not, the application must be prosecuted in his own name.
2. The question whether the assignees of an inventor whose applica-
tions are pending in the Patent Office are proper parties to a bill
for an injunction against the Commissioner of Patents, filed by

him and them, will not be considered by this court if not presented to the court below.

3. The Commissioner of Patents has power to institute an investigation into the conduct of his office with a view to the efficiency of the service and the eradication of corrupt practices if such are found to exist; and the manner in which such investigation shall be conducted and testimony elicited is within his discretion, and that discretion is not subject to the control of the court.

4. Where, in an investigation instituted by the Commissioner of Patents as to the conduct of his office, the rights and interests of an applicant for a patent are involved, due proces of law, so far as he is concerned, is observed if he is given copies of the charges made, and notice is given him that testimony will be taken, and he is given an opportunity to hear and cross-examine witnesses to be introduced, and to offer any testimony in his own behalf.

5. Upon the institution by the Commissioner of Patents of proceedings to investigate charges against an applicant for a patent and others, involving alleged corrupt practices in the Patent Office, it is not to be presumed that the charges will be sustained and the ultimate rights of the applicant affected injuriously, and an injunction based upon such a presumption is, at least, premature.

6. The power to enjoin the action of an executive officer or a subordinate tribunal in a given case rests upon the same foundation as that to compel action by mandamus; and the writ of mandamus will not be used to perform the office of a writ of error, nor will it lie where there is another plain and adequate remedy for the injury done. (Following *Moore* v. *United States ex rel. Lindmark,* 33 App. D. C. 597.)

7. Whether authorized to do so by rule 31 of the Patent Office or not, the Commissioner of Patents has the power, either in an *ex parte* proceeding or in an interference case, to inquire and determine whether an application for a patent has been altered or substituted without authority by the attorney for the applicant with the applicant's connivance or consent, or by anyone else, because, if altered or substituted, the application will not be the one contemplated by the statute as the foundation of a patent.

8. The acquittal of an applicant for a patent indicted with other persons for having conspired to fraudulently alter and change applications for patents is not a bar to an investigation in the Patent Office by the Commissioner of Patents as to whether the applications had been so altered and changed.

9. *Quære,*—whether an appeal to this court will lie from an order of the Commissioner of Patents striking an application for a patent from the files of the Patent Office on the ground that it has been fraudu-

lently altered by the attorney for the applicant with the applicant's connivance and consent.

10. The courts are invested with no power to interfere with or to supervise the practice of the Patent Office. It is only in cases where a hearing is refused a party, or the Commissioner refuses to perform a plain duty, or where he undertakes to do an unwarranted act, or where there is no other adequate remedy, that the courts are authorized to interfere by mandamus or injunction.

11. An appeal to the Supreme Court of the United States from this court will not lie, and an application for the allowance of such an appeal will be denied by this court, where its decree reverses a decree of the supreme court of the District of Columbia, enjoining the Commissioner of Patents from striking certain applications for patents from the files of his office, and proceeding with an investigation as to whether the applications had been fraudulently altered or changed.

Nos. 2049 and 2063. Patent Appeals. Submitted October 15, 1909. Decided November 3, 1909.

HEARING on two appeals (one specially allowed and the other a general one) from a decree of the Supreme Court of the District of Columbia granting an injunction against the Commissioner of Patents.            *Reversed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from the decree of the equity court ordering a preliminary injunction restraining the Commissioner of Patents from further proceeding in an investigation of certain charges relating to tampering with applications for patents, that was about to be prosecuted by the Commissioner.

The motion for the injunction was heard on bill, answer to rule to show cause, and demurrer.

The undisputed facts are the following: Between December 29th, 1904, and November 19th, 1906, John A. Heany filed twelve applications for patents, duly verified by oath, and paid the required fees.

The inventor's claims related to filaments for incandescent lamps, and to processes for making such filaments.

Certain of these applications had been assigned to the Heany

Company and the Heany Lamp Company, which joined in the bill.

On February 8th, 1909, A. F. Kinnan, principal examiner, Division 37 of the Patent Office, addressed a communication to the Commissioner, in which he charged that fraudulent alterations had been made in the specifications of certain applications, and forgeries perpetrated in connection therewith. Without setting those out, it is sufficient to say that the alterations consisted in removing certain sheets of the specifications, and substituting others differing in some essential particulars. The forgeries consisted of signatures to amendments, and filing dates and marks on the same, in certain cases that had become abandoned for failure to take action within a year. These forged filings showing a date just before the lapse of the year, for the purpose of preventing the effect of abandonment. Some of these substitutions and changes were for the purpose of showing invention of processes for which patents had later been applied for by others. It was charged that these alterations and forgeries were committed by one Barton, then an assistant examiner in said department, with the co-operation of one Everding, attorney for Heany and that Heany abetted and connived at said acts.

Upon receipt of this communication, the Commissioner addressed a notice to Heany, accompanied by a copy of the charges, requiring him to answer on or before March 1st, 1909, as to the truth of the same, and to show cause why certain of the applications should not be stricken from the files of the Office and certain others held to be abandoned. The notice concluded as follows: "Upon failure to make answer, or to deny the truth of any charge, the same will be considered true, and such action will be taken thereon as deemed proper. Upon receipt of your answer to the charges, times and places will be set for the taking of such testimony as may be necessary to prove the truth of said charges, and you will be notified thereof; and an opportunity will be given you to be present and cross-examine the witnesses, and to produce such witnesses as you may desire to testify in your behalf." Heany appeared and

filed answer signed by himself and counsel. The first paragraph is an exception to the Commissioner's power to strike an application from the files. The remaining paragraphs relate to the specific charges. They do not deny that the charges were made, but say that respondent is not sufficiently advised to form a belief as to the alleged acts of Barton and Everding; but that, if done, the act was without his knowledge, consent, or connivance. In support of his want of knowledge and consent, he avers a trial on a joint indictment against Barton, Everding, and himself, and his acquittal of the said charge on December 23d, 1908, which is *res judicata.* The Heany Company and the Heany Lamp Company also filed answers setting up their respective assignments, and denying any knowledge of the alleged frauds.

About April 3d, 1909, Hans Kuzel, Just and Honaman, and one Von Bolton, parties to interferences that had been declared with Heany's applications, aforesaid, filed petitions in said proceedings, alleging substantially the same facts charged by Kinnan, asking that Heany's application No. 238,769 and division application No. 322,781 be stricken from the files and treated as nullities, and that the interferences be dissolved.

Hearing on these petitions, to which Heany was cited to answer on or before May 1st, 1909, was appointed for the same day as that on Kinnan's charges, which had been postponed.

The Commissioner had caused an investigation to be made of irregularities of the Heany applications, in February, 1908. As a result, indictments were presented in the supreme court of the District shortly thereafter, charging Heany, Barton, and Everding in several counts with conspiracy in the matter of altering and changing the applications aforesaid. Three of these indictments are set out in the records as exhibits. These had been consolidated for trial and resulted as follows: Barton pleaded guilty, Everding was tried and found guilty, and Heany was acquitted. Judgment was entered in accordance therewith.

Before a hearing could be had on the charges and answers thereto, in the Patent Office, this bill was filed. The prayer

was for a writ of injunction restraining the Commissioner from striking the said applications of Heany from the files, or "from otherwise proceeding as and in the manner contemplated by the several orders to show cause aforesaid."

From the order granting the injunction, the Commissioner obtained a special appeal on application. He also took a general appeal. There has been no motion to dismiss either appeal, and they have been heard together.

*Mr. Frank C. Skinner* and *Mr. Jesse C. Adkins* for the appellant, the Commissioner of Patents.

*Mr. Charles A. Douglas, Mr. Gibbs L. Baker,* and *Mr. J. H. Brickenstein* for the appellee John A. Heany.

*Mr. Marcellus Bailey* and *Mr. James H. Hayden* for the appellees the Heany Company and the Heany Lamp Company.

*Mr. Morgan H. Beach,* counsel for the General Electric Company, as *amicus curiæ.*

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

John A. Heany, as the sole inventor, is the applicant for the patent in each case pending in the Patent Office, and, whether he has assigned his interests in the inventions or not, the applications must be prosecuted in his name. Whether his assignees are proper parties as complainants in this bill is a question that was not presented in the court below, and will not therefore, be considered as involved here.

The injunction granted not only restrains the Commissioner of Patents from taking any action affecting the applications of Heany, but also prohibits him from prosecuting the investigation of the charge of corrupt practices in his office relating thereto.

The Commissioner of Patents is the official head and ad-

ministrator of a great and important public office. The duties devolved upon him are both executive and judicial in their character. As an executive officer it is his duty to see that the business of the office is carried on honestly, methodically, and with reasonable despatch. As regards every application for a patent, there are two interests involved,—that of the applicant and that of the public. It is the duty of the Commissioner to see that the formal requirements of the statutes relating to applications are complied with. When an application is found to be sufficient in form, it then becomes his duty to inquire and determine if the applicant is justly entitled to the patent as claimed. The investigation of the claim involves the adjudication of disputed questions of fact, upon scientific or legal principles. The proceeding is essentially judicial in its character.

As a necessary incident of these general powers, the Commissioner has the power to institute investigations into the conduct of his office generally with a view to the efficiency of the service and the eradication of corrupt practices, if such are found to exist.

In what manner such investigations shall be conducted and testimony elicited is a matter within the discretion of the Commissioner, and no court is vested with supervisory power over him. To the extent, then, that the injunction restrains any inquiry into the charges of improper practices in relation to the pending applications, it is clearly erroneous. Whenever, as the result of such an investigation, the Commissioner undertakes action that would injuriously affect an applicant's right of property, or tend to deprive him thereof, he must act by authority of, and according to due process of, law.

In so far, however, as the proposed investigation of the charges of fraudulent alterations of Heany's applications might incidentally affect his interests, due process of law seems to have been pursued. Copies of the charges were delivered to him, and notice was given also that testimony would be taken with an opportunity to hear and cross-examine the witnesses to be introduced, as well as to offer any testimony in opposi-

tion. Just and careful regard was had for the incidental rights and interests of Heany in these preliminary steps.

It does not follow from proceedings so begun, that the charges would necessarily be sustained, and, moreover, that the Commissioner purposed to destroy inchoate rights of the applicant in such manner that he would be deprived of a right to appeal from this final order in the premises.

The injunction not only went farther than there is any warrant for, as above intimated, but, in so far as it seeks to protect the ultimate rights of the applicant, it is, at least, pre-mature.

But, assuming, as has been contended, that the avowed purpose of the proposed investigation was to furnish a foundation for striking the applications from the files, and that such would be its probable result, has the equity court the power to restrain the Commissioner?

The power to enjoin the action of an executive officer, or of a subordinate tribunal, in a given case, rests upon the same foundation as that to compel action by mandamus. As has been recently held in an analogous case, the writ of mandamus cannot be used to perform the office of an appeal or writ of error; nor will it lie where there is another plain and adequate remedy for the injury done. *Moore* v. *United States ex rel. Lindmark,* 33 App. D. C. 597 (present term).

It is not necessary to determine whether rule 31 of the Patent Office, under which the Commissioner claims the power to strike from the files an application that has been fraudulently altered, is, in its entire scope, consistent with the statutes governing procedure in the Office. The question is a difficult one, and it may be conceded that it is doubtful if it is so to the full extent of the scope claimed for it. Clearly, however, the Commissioner has the power, either in an *ex parte* or an interference case, to inquire and determine whether an application has been altered or substituted without authority. Whether such an alteration shall have been made by the attorney of the applicant, with the latter's connivance or consent, is immaterial. The efficacy of the application would be

destroyed by such alteration. It would no longer be the application contemplated by the statute as the foundation of the patent. Nor is the power to so declare, as the result of investigation, barred by the adjudication in the criminal case. The question adjudicated therein was not whether the application had been altered, but whether the applicant was a guilty party thereto. The fact of alteration is not *res judicata.*

It is conceded that if, instead of striking the application from the files on account of an alteration or unauthorized amendment, the Commissioner should reject it formally, an appeal would lie to this court from the order of rejection. But if, instead of a formal rejection, the Commissioner should order the application stricken from the files, it seems to the writer that an appeal would also lie from that order.

A court would look to the substance, the necessary effect and operation of the order, rather than to its formal recital merely. Surely the Commissioner may not, by striking an application from the files, when regularity required its rejection for the same cause, take away an applicant's right of appeal. No matter what the form of the order, the effect is substantially the same; namely, the final refusal of a patent to which the party might justly be entitled. We do not decide this point, however, as our decision may be rested upon another and more satisfactory ground.

We cannot entertain a presumption that the Commissioner has predetermined the action to be taken as a result of his investigation. We must presume that, if he finds the alterations to have been made, but without the knowledge and consent of the applicant, he will permit it to be corrected so as to restore it to its condition as originally filed. In that event there will be nothing of which the applicant can complain.

If, on the other hand, he finds that it was tampered with by the connivance and approval of the applicant, he will probably enter an order rejecting the application, leaving the applicant his right to appeal therefrom. We cannot presume that he will not. Should he strike the application from the files, and it should transpire that no appeal could be prosecuted from

that order, the applicant might then proceed by mandamus to compel him to vacate that order and give the applicant a hearing on his right to have his application entertained. No such irreparable injury could result, under the conditions suggested, as would warrant the interposition of a court of equity.

The courts are invested with no power to interfere with or to supervise the practice of the Patent Office. It is only in cases where a hearing is refused a party, or the Commissioner refuses to perform a plain duty, or where he undertakes to do an unwarranted act, for which there is no other adequate remedy, that the courts are authorized to interfere by mandamus or injunction.

No such case is presented on this record. The decree for the injunction will be reversed, with costs, and the cause remanded with direction to dismiss the bill.          *Reversed.*

On the 15th day of November, 1909, the Court, by Mr. Chief Justice SHEPARD, handed down the following additional opinion:

These two appeals, one special and the other general, from the same order, were considered together without question raised as to the sufficiency of either appeal. The decree entered should have disposed of both, and it is now amended so as to apply to each.

Application has been made by the appellees for an appeal from the decree entered here to the Supreme Court of the United States. We are of the opinion that no appeal lies in such a case. *Durham* v. *Seymour,* 161 U. S. 235, 40 L. ed. 682, 16 Sup. Ct. Rep. 452. The application for allowance of the appeal is therefore denied.

On November 27, 1909, on application by the appellees to one of the justices of the Supreme Court of the United States, an appeal to that court was allowed.