**BRUNSWICK v. ELLIOTT, Acting Comptroller General.**

**No. 7137.**

United States Court of Appeals for the District of Columbia.

Decided Feb. 20, 1939.

---

[9] Note 8, supra.

Huston Thompson and Herbert S. Ward, both of Washington, D. C., for appellant.

David A. Pine, U. S. Atty., H. L. Underwood, Asst. U. S. Atty., R. L. Golze, General Counsel, General Accounting Office, and Albert A. Peter, Attorney, General Accounting Office, all of Washington, D. C., for appellee.

Before MILLER, EDGERTON, and VINSON, Associate Justices.

MILLER, Associate Justice.

Appellant was retired from the Foreign Service of the United States on August 31, 1932, on account of permanent disability.[1] Thereupon, he became entitled to receive a retirement annuity amounting to $1623.12 per annum,[2] which was paid to him from the date of retirement until September 1, 1936.

From May 9, 1935 until June 30, 1935, appellant was employed by the National Emergency Council; from February 17, 1936 until August 3, 1936, he was employed by the Resettlement Administration; and from August 3, 1936 until the commencement of this suit, he was employed as assistant fiscal accounting clerk in the office of the Commissioner of Accounts and Audits. None of the positions held by appellant were under the Classified Civil Service. During the periods mentioned appellant received, successively, the salaries attached to the three offices and his retirement allowance as well.

These facts were brought to the attention of appellee, the Acting Comptroller General, on July 22, 1936, by the President of the United States Civil Service Commission, who, in the same letter, requested that appellee render a decision upon the two following questions:

"1. May a Foreign Service Officer of the State Department, retired for reasons other than having reached automatic retirement age, be reemployed in the executive civil service?

"2. If your answer to the foregoing question is in the affirmative, may both civilian compensation and retirement annuity be paid over the same period of time?"

On August 6, 1936, appellee answered the questions as follows:

"Answering your question specifically you are advised that there is no prohibition of law against the reemployment in the executive civil service of a former foreign service officer—who has not attained the age for automatic retirement—retired for disability, but his retirement annuity may not be paid concurrently for the period of such employment. See inclosed copy of letter of this date to the Secretary of State."

On the same date appellee forwarded a copy of his decision to the Secretary of State and advised him that appellant's retirement annuity "should be immediately suspended and the annuitant requested to refund all annuity received for the period of his civilian employment with the National Emergency Council and the Resettlement Administration."

The Secretary of State thereupon informed appellant of appellee's decision and notified him that—it being the duty of the Department of State to comply with the law as thus construed—further payments of the annuity were therefore suspended,

---

[1] Act of May 24, 1924, 43 Stat. 140, 144, 145, § 18(j), as amended by Act of February 23, 1931, 46 Stat. 1207, 1211, 1212, § 26(j), 22 U.S.C.A. § 21(j) the pertinent portion of which reads as follows: "That any Foreign Service officer who, before reaching the age of retirement becomes totally disabled for useful and efficient service by reason of disease or injury not due to vicious habits, intemperance, or willful misconduct on his part, shall, upon his own application or upon order of the President, be retired on an annuity under paragraph (e) of this section: Provided, however, That in each case such disability shall be determined by the report of a duly qualified physician or surgeon designated by the Secretary of State to conduct the examination * * *."

[2] 46 Stat. 1207, 1211, 22 U.S.C.A. § 21 (e).

and requested a return of the sum of $973.-88, the amount paid during the periods of employment subsequent to retirement.

Appellant declined to make the refund and informed the Secretary of State that he had been advised the action of the Comptroller General was contrary to law and that he would "take up the matter further in the near future." The Secretary of State conveyed this information to the Comptroller General and requested that the latter advise him "of the administrative action taken in the matter." In reply appellee informed the Secretary of State that appellant's denial of the Comptroller's authority disclosed no reason for delaying suspension of the annuity or for failing to secure a refund of the amounts alleged to have been erroneously paid. Accordingly, appellee again requested the Secretary of State to proceed as previously directed. Thereafter, on November 7, 1936, appellee, as Acting Comptroller General, gave notice to appellant of settlement of claim of the United States for the amount of $973.-88 against him and demanded payment thereof. On November 30, 1936, appellant filed his bill in the lower court against appellee and R. Walton Moore, Acting Secretary of State, praying that the latter be ordered to pay to appellant the retirement allowance to which he considered himself entitled under the law; that appellee be enjoined from interfering or in any way preventing such payment to appellant; and that he be further enjoined and prohibited from collecting or attempting to collect the sum which had been paid appellant theretofore. The bill was dismissed as to Moore and he is not a party to this appeal.

The cause was heard upon the bill and answer; the lower court decreed that the rule to show cause which had been issued should be discharged and the bill dismissed; and this appeal is from that decree. In dismissing the bill the lower court held:

"Plaintiff's [appellant's] counsel have cited no statute or case to the effect that a retired civilian employee of the Government, receiving a retirement annuity for disability, can be reemployed in Government service and draw concurrently the civilian retirement annuity and active compensation while so reemployed. The Comptroller General, in a long line of decisions, has ruled to the contrary.

* * *

"Plaintiff's [appellant's] alleged right to receive concurrently his retirement annuity and his active service compensation is not so clear and free from doubt that an injunction will lie to enforce it. Plaintiff has in the Court of Claims a forum in which he can establish his alleged right.

"I find no statute or other authority giving the plaintiff the right to receive concurrently his retirement annuity and active service compensation, and therefore the injunctive relief prayed for is denied and the bill of complaint will be dismissed."

Appellant seeks a decision upon the merits of the question whether a retired Foreign Service officer is entitled to receive, concurrently, an annuity for disability and compensation for services rendered as a civilian employee. But there is no occasion to decide that question. Regardless of what this court may consider the proper interpretation of the pertinent statutes, or what the Court of Claims may decide in a suit brought to determine the matter on its merits, appellee cannot be subjected to the writ of injunction sought because (1) he acted within the scope of his authority under the law; (2) his action was not arbitrary or capricious; but (3) depended instead upon the reasonable exercise of judgment and discretion in the interpretation and application of the pertinent statutes.

■ There can be no doubt that the matter came within the jurisdiction of the Comptroller General. The Budget and Accounting Act of June 10, 1921, 42 Stat. 20, 31 U.S.C.A. § 1 et seq., provides that he shall have control and direction of the General Accounting Office.[3] It provides further that "The balances certified by the

---

[3] 42 Stat. 23, § 301, 31 U.S.C.A. § 41. By this Act the powers and duties formerly imposed by law upon the Comptroller of the Treasury or the six auditors of the Treasury Department were transferred to the Comptroller General. See United States ex rel. Skinner & Eddy Corp. v. McCarl, 275 U.S. 1, 4, 48 S.Ct. 12, 72 L.Ed. 131. The purpose of the Act was to effect as independent a supervision of the accounts of the Government as possible. See Langeluttig, Legal Status of the Comptroller General of the United States, 23 Ill.L.Rev. 556, 559. Thus, by Section 304 of the Budget and Accounting Act of 1921, 42 Stat. 24, 31 U.S.C.A. § 44, it is provided that all duties and powers of the Comptroller General shall be exercised without direction from any other officer.

Comptroller General shall be final and conclusive upon the executive branch of the Government";[4] and that the General Accounting Office shall receive and examine all accounts relating to the Foreign Service—as well as all other accounts of the Department of State—and shall certify the balances arising thereon to the Secretary of State.[5] The law provides generally, that:

"All claims and demands whatever by the Government of the United States or against it, and all accounts whatever in which the Government of the United States is concerned, either as debtor or creditor, shall be settled and adjusted in the General Accounting Office."[6]

And it provides further that the Comptroller General shall, upon request of a proper officer, render a decision such as that which is involved in the present case.[7]

When the fact of appellant's double compensation came to appellee's attention, therefore, it became his duty to inquire into the matter and answer the question thus presented.[8] Unless the answer to this question was so free from doubt as to require no exercise of judgment or discretion, his duty in the premises was not merely ministerial and an injunction to restrain him from acting as he has done would be improper.

It is conceded by appellant that there is no affirmative statutory *authorization* for concurrent payment to him of disability annuity and compensation for services rendered as a civilian employee. He insists, however, that in the absence of statutory *prohibition* the law may properly be so interpreted as to permit such concurrent payment. In reply, appellee contends that the statutes, rulings and appropriate committee reports, indicate a contrary congressional intent. Appellant's argument proceeds as follows: Prior to the enactment of the first Civil Service Retirement Act of May 22, 1920, 41 Stat. 614, 5 U.S.C.A. § 691 et seq., there was no prohibition against the holding of two compatible offices in the Federal Government,[9] and no prohibition against the receiving concurrently of retirement pay in one department and of compensation for compatible employment in another department;[10] the Civil Service Retirement Act of 1920 contained no prohibition against the drawing of salary by an annuitant from a temporary position in a temporary division of the Government; in 1924 Foreign Service employees of the Department of State were separated from the Classified Civil Service by the Foreign Service Act,[11] paragraph (m) of Section 18 of which [22 U.S.C.A. § 21(m)] permitted acceptance of employment by a retired officer but provided that if the emoluments thereof exceeded his annuity the latter should be proportionately reduced; this provision was not included in the Civil Service Retirement Act; the Act of February 23, 1931, 46 Stat. 1207, amending the Foreign Service Act, omitted paragraph (m) of Section 18; in explanation of this omission the Conference Report,[12] which accompanied the Bill at the time of its passage, said: "and (e) elimination of present provisions of law which prevent retired officers from obtaining employment with salaries in excess of their annuities, which is a particular hardship upon retired officers with low annuities"; paragraph (m) of Section 18 of the 1924 Act constituted the first limitation placed upon annuities, and its elimination by the 1931 Act was intended to wipe out the limitation altogether because it was so unfair as applied to retired Foreign Service officers.

---

4 Ibid.

5 42 Stat. 24, 31 U.S.C.A. § 72.

6 R.S. § 236, 31 U.S.C.A. § 71.

7 42 Stat. 24, 31 U.S.C.A. § 74 (Supp. 1938): "Disbursing officers, or the head of any executive department, or other establishment not under any of the executive departments, may apply for and the Comptroller General shall render his decision upon any question involving a payment to be made by them or under them, which decision, when rendered, shall govern the General Accounting Office in passing upon the account containing said disbursement." See 22 Op.Atty.Gen. 581;

26 Op.Atty.Gen. 609; 33 Op.Atty.Gen. 268.

8 See United States v. Heller, D.C.Md., 1 F.Supp. 1, 2.

9 United States v. Saunders, 120 U.S. 126, 7 S.Ct. 467, 30 L.Ed. 594.

10 Collins v. United States, 15 Ct.Cl. 22.

11 Act of May 24, 1924, § 1, 43 Stat. 140, 22 U.S.C.A. § 1.

12 Conf.Rep. No. 2702, 71st Cong., 3rd Sess. The quotation relied upon does not appear in the Conference Report but rather in the Statement of the Managers on the part of the Senate. See 74 Cong. Rec. 5025, 5026.

Appellee argues, on the other hand, that there is a long established principle which forbids payment of retirement annuity concurrently with payment for active civilian service because it is wholly inconsistent with the basic purpose underlying civil service retirement legislation; that there are special statutes which expressly authorize retired Army and Naval officers to hold civilian offices and receive concurrent payments,[13] but no such authority has been extended to Foreign Service officers except such as was contained in Section 18 of the 1924 Act, and repealed by the 1931 Act; that in the absence of express statutory authorization therefor, the accounting officers of the Federal Government have uniformly applied a rule prohibiting such concurrent payments; that the Senate Report relating to the Foreign Service Act of May 24, 1924[14] stated that the bill provided for "A retirement system based upon the principles of the civil-service retirement and disability act of May 22, 1920, but administered entirely separately therefrom"; hence the fact that the retirement of Foreign Service officers is separately administered from the retirement of Civil Service officers is immaterial.

This summary of the respective arguments of the parties—or of the argument of the appellant alone for that matter —shows that the question is not free from reasonable doubt. A writ of injunction, like a writ of mandamus,[15] cannot be used to establish a legal right. The duty to act or refrain from acting must be so clear as not to admit of reasonable doubt or controversy,[16] in order to justify such judicial control or guidance of administrative action. Under the circumstances, therefore, it was the duty of the Comptroller to render a decision, which in turn was required to be based upon an interpretation of statutes, the construction and application of which were not "free from doubt and equivalent to a positive command." [17] This duty was not ministerial but was instead administrative and quasi-judicial in character, requiring for its proper performance the exercise of judgment and discretion. Consequently its exercise cannot be controlled by writ of mandamus,[18] or injunction.[19] "To hold otherwise would ren-

---

[13] Act of July 31, 1894, 28 Stat. 205, 5 U.S.C.A. § 62; Act of May 10, 1916, § 6, 39 Stat. 120, as amended by Act of August 29, 1916, 39 Stat. 582, 5 U.S.C.A. §§ 58, 59; Act of June 30, 1932, § 212, 47 Stat. 406, 5 U.S.C.A. § 59a.

[14] Sen.Rep. No. 532, 68th Cong., 1st Sess.

[15] See United States ex rel. Girard Trust Co. v. Helvering, 301 U.S. 540, 543, 57 S.Ct. 855, 81 L.Ed. 1272; Bates & Guild Co. v. Payne, 194 U.S. 106, 109, 24 S.Ct. 595, 48 L.Ed. 894; Miguel v. McCarl, 291 U.S. 442, 452, 54 S.Ct. 465, 78 L.Ed. 901; Warner Valley Stock Co. v. Smith, 165 U.S. 28, 33, 17 S.Ct. 225, 41 L.Ed. 621; Gaines v. Thompson, 7 Wall. 347, 352, 19 L.Ed. 62; Proctor & Gamble Co. v. Coe, 68 App.D.C. 246, 96 F.2d 518, certiorari denied, 59 S.Ct. 65, 83 L.Ed. ——; Moore v. Heany, 34 App.D.C. 31, appeal dismissed, 216 U.S. 624, 30 S.Ct. 575, 54 L.Ed. 642. See also, Virginian Ry. v. System Federation No. 40, 300 U.S. 515, 551, 57 S.Ct. 592, 81 L.Ed. 789; Ferris v. Wilbur, 4 Cir., 27 F.2d 262, 264.

[16] United States ex rel. McLennan v. Wilbur, 283 U.S. 414, 420, 51 S.Ct. 502, 75 L.Ed. 1148; Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809; Wilbur v. United States ex rel. Krushnic, 280 U.S. 306, 318-319, 50 S.Ct. 103, 74 L.Ed. 445; United States ex rel. International Contracting Co. v. Lamont, 155 U.S. 303,

308, 15 S.Ct. 97, 39 L.Ed. 160; United States ex rel. Stowell v. Deming, 57 App.D.C. 223, 224, 19 F.2d 697, 698, certiorari denied, 275 U.S. 531, 48 S.Ct. 28, 72 L.Ed. 410; United States ex rel. Kansas City So. Ry. v. Interstate Commerce Comm., 68 App.D.C. 396, 398, 98 F.2d 268, 270, certiorari denied, 59 S.Ct. 86, 83 L.Ed. ——; United States ex rel. White v. Coe, 68 App.D.C. 218, 95 F.2d 347.

[17] See Miguel v. McCarl, 291 U.S. 442, 451, 54 S.Ct. 465, 467, 78 L.Ed. 901, modifying 62 App.D.C. 259, 66 F.2d 564; 21 Op.Atty.Gen. 178; 33 Op.Atty.Gen. 265.

[18] See Work v. United States ex rel. Rives, 267 U.S. 175, 177, 45 S.Ct. 252, 69 L.Ed. 561; United States ex rel. Dunlap v. Black, 128 U.S. 40, 47, 9 S.Ct. 12, 32 L.Ed. 354; United States ex rel. Hall v. Payne, 254 U.S. 343, 347, 348, 41 S.Ct. 131, 65 L.Ed. 295; Interstate Commerce Comm. v. United States ex rel. Members of the Waste Merchants' Ass'n, 260 U.S. 32, 34, 43 S.Ct. 6, 67 L.Ed. 112; United States ex rel. Ness v. Fisher, 223 U.S. 683, 691, 692, 32 S.Ct. 356, 56 L.Ed. 610.

Louisiana v. McAdoo, 234 U.S. 627, 633, 34 S.Ct. 938, 941, 58 L.Ed. 1506: "Interference in such a case would be to interfere with the ordinary functions of government."

[19] New Orleans v. Paine, 147 U.S. 261, 264, 13 S.Ct. 303, 37 L.Ed. 162; Gaines

der orderly administrative procedure impossible."[20] Thus, if the writ were granted in the present case we would in effect require the Comptroller General "to repudiate and disaffirm a decision which he regarded it his duty to make in the exercise of that judgment which is reposed in him by law, and we should require him to come to a determination upon the issues involved directly opposite to that which he had reached, and which the law conferred upon him the jurisdiction to make."[21] This we cannot do.[22]

Consequently, the decision of the lower court was correct and it is not necessary for us to consider the other contentions urged by appellant.

Affirmed.

---

v. Thompson, 7 Wall. 347, 352, 19 L.Ed. 62; Houston v. St. Louis Independent Packing Co., 249 U.S. 479, 484, 485, 39 S.Ct. 332, 63 L.Ed. 717; Noble v. Union River Logging R. R., 147 U.S. 165, 171, 172, 13 S.Ct. 271, 37 L.Ed. 123; Commercial Solvents Corp. v. Mellon, 51 App.D.C. 146, 148, 277 F. 548, 550. See also, cases cited in note 15, supra.

[20] Adams v. Nagle, 303 U.S. 532, 543, 58 S.Ct. 687, 693, 82 L.Ed. 999.

[21] United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 325, 23 S.Ct. 698, 702, 47 L.Ed. 1074. See also, Wilbur v. United States ex rel. Kadrie,

281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809.

[22] Moreover, even if appellant's rights under the statute granting him retirement benefits had been so clear as to permit no difference of opinion, and, consequently, the Comptroller General's construction had been erroneous, it is doubtful whether an injunction should issue in any event in the light of the Supreme Court's opinion in Miguel v. McCarl, 291 U.S. 442, 456, 54 S.Ct. 465, 78 L.Ed. 901; cf. Mansfield, Judicial Review of the Comptroller General, 20 Corn.L.Q. 459, 470 et seq.; Note, 3 Geo.Wash.L. Rev. 97.