PAYNE, Postmaster, v. FITE.

PAYNE, Postmaster, v. FITE et al.

Nos. 13290, 13364.

United States Court of Appeals, Fifth Circuit.

Nov. 10, 1950.

Rehearing Denied Dec. 12, 1950.

No. 13290:

Frank B. Potter, U. S. Atty., Ft. Worth, Tex., O. Morris Harrell, Asst. U. S. Atty., Dallas, Tex., Marvin C. Taylor, Atty. Dept. of Justice, H. G. Morison, Asst. Atty. Gen., both of Washington, D. C., for appellant.

Frank Cusack, Dallas, Tex., for appellee.

No. 13364:

Frank B. Potter, U. S. Atty., Ft. Worth, Tex., O. Morris Harrell, Asst. U. S. Atty., Dallas, Tex., Marvin C. Taylor, Atty. Dept. of Justice, Washington, D. C., for appellant.

Frank Cusack, Tom King and Frank H. Cathey, Jr., all of Dallas, Tex., for appellees.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

Grounding his claim to federal jurisdiction on Section 1339, Title 28, U.S.C.A., and on the line of cases[1] holding that suit may be brought against a subordinate officer alone when the act complained of is an invasion or denial of a right of the person sued, and the decree "will not require the superior officer to take action * * *", but "will effectively grant the relief desired by expending itself on the subordinate officer who is before the court, suit may be brought against him alone", the plaintiff Fite brought this suit against the local Postmaster at Dallas.

Alleging that the Postmaster, in violation of the Fifth Amendment and of the directions of the Postmaster General, was discriminating in respect of mail service against him and the business area in which he conducts his business, in favor of another business section, Down Town Dallas, plaintiff sought a mandatory injunction, temporary and permanent, to require the defendant to correct such discrimination.

Defendant's plea to the lack of jurisdiction of the court to direct the manner in which executive discretion and judgment of officers of the United States are or shall be, exercised, and his plea, that the Postmaster General was an indispensable party and the suit could not proceed without him, both overruled, the court awarded a preliminary injunction[2] which was appealed to this court in cause No. 13290.

Thereafter many persons claiming to be similarly situated with plaintiff were allowed to intervene, and the case was fully heard on its merits and upon findings of fact and of law, the injunction was made permanent.[3] An appeal was taken from that judgment, and, on application of the United States, both appeals were advanced and set for submission on the same day.

As to the first appeal, it was made to appear that the temporary injunction was no longer in force, having expired of its own terms by being substituted by the final and permanent order, and that the issues on that appeal had become moot.

The issues arising on the second appeal, both as to jurisdiction and on the merits, were fully argued orally and on briefs.

We will not concern ourselves with the matter of the merits of the appeal. For as the brief statement, in the margin, of the undisputed facts will show, the suit should have ben dismissed for want of jurisdiction because it was in fact and effect

1. Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95, and Neher v. Harwood, 9 Cir., 128 F.2d 846, 158 A.L.R. 1116, where the cases, including those from this circuit, Yarnell v. Hillsborough, 5 Cir., 70 F.2d 435; Ryan v. Amazon, 5 Cir., 71 F.2d 1, and Rood v. Goodman, 5 Cir., 83 F.2d 28 are assembled and discussed.

2. "ORDERED, ADJUDGED AND DECREED that the defendant, J. Howard Payne, Postmaster at Dallas, Texas, be and he is hereby restrained and enjoined from carrying into effect the directive of the Postmaster General of the United States embodied in the postal bulletin dated April 18, 1950, insofar as the same curtails delivery of mail to the plaintiff, Judge B. Fite, at his place of business at 322 West Jefferson Boulevard, Dallas, Texas, until the further order of this Court." 91 F.Supp. 21.

3. "It is by the Court this 18th day of July, 1950, therefore ordered, adjudged and decreed that the defendant, J. Howard Payne, Postmaster at Dallas, Texas, be, and he is hereby permanently restrained and enjoined from discriminating against the business area of Oak Cliff by extending more mail delivery service in any business area of the City of Dallas, than is extended to the business area of Oak Cliff, in which the plaintiff and intervenors have their respective places of business, to-wit:

"Jefferson Boulevard in Dallas, Texas, between Polk Street and Lancaster Avenue to wit that number it enjoyed before it was determined to be a residential district, and I find it to be a business district." 91 F.Supp. 896.

a suit against the United States.[4] Undertaking as it did to deal with, to direct, and to control, the carrying out of policies of the United States in respect to its postal services, it was in substance and in fact a suit against the United States. The judgment, if effective, would have controlled the executive branch in the discretionary exercise of duties imposed, of functions conferred, upon it, and this being so, the United States not having consented to be sued, the suit was not maintainable.

It is clearly settled that an officer of the United States who unlawfully undertakes to deprive a citizen of a right is subject to suit in his personal capacity to prohibit him, or compel him to desist, from doing so. It is equally well settled that where the suit is not against him personally but to control or direct his action as an officer of the United States in respect of matters confided to his discretion, the suit is one against the United States and may not be maintained without its consent to be sued.

4. On April 18, 1950, following a drastic cut in the appropriation for the Post Office Department, and an admonition of the Appropriations Committee of the House of Representatives that the Postmaster General "provide for the rearrangement of city delivery service so as to reduce the number of deliveries wherever possible", the Postmaster General published his ORDER 42946 directing postmasters throughout the United States to readjust their services in accordance with the INSTRUCTIONS OF THE FIRST ASSISTANT POSTMASTER GENERAL published the same day.

Paragraphs 1 and 3 of the INSTRUCTIONS, which are the ones most directly relevant to the present issues, are as follows:

"1. Immediately proceed with the readjustment of city delivery routes in residential areas so as to provide one delivery each weekday, Monday through Saturday. These routes are to be readjusted on a permanent one-trip basis as rapidly as possible, and should be completed not later than July 1, 1950. On Saturdays, in the business area, normal three-trip routes should be given not more than two deliveries, and normal two-trip business routes, not more than one delivery. Considerable economies should be effected during the period of readjustment."

"3. It should be understood that neighborhood stores and professional offices do not require more than the one delivery each day. In mixed business and residential territory, where a second delivery is necessary to provide for other businesses and factories dependent upon the mail service, efforts should be made to consolidate delivery to these areas to the minimum number of carriers required to make a second trip."

By May 24, 1950, appellant "in an effort on his part to implement the ORDER AND INSTRUCTIONS OF APRIL 18th, had reduced deliveries to one a day in practically all parts of the City of Dallas (including the part involved in this case) which theretofore had been getting two deliveries. Three deliveries were continued in the so-called "downtown business district" for the same reason that they were originally established—namely, to keep abreast of daily incoming mail addressed to that area.

On June 14, 1950, Judge B. Fite, who conducts a "general insurance business" in the so-called Chamber of Commerce Building at 322 W. Jefferson Boulevard in the Oak Cliff section of Dallas, filed a complaint, with a 60-day summons, alleging that "the territory adjacent to said Chamber of Commerce Building for at least four blocks in either direction on each side of Jefferson Boulevard" is a "business area"; that his business is dependent upon mail service; that the reduction in his deliveries from two to one is arbitrary, discriminatory and unwarranted and gives an unfair advantage to his competitors in the downtown area which receives three deliveries; and that the reduction deprives him of due process and equal protection under the Fifth Amendment, and impairs a substantial right. In the complaint, and in a motion for a temporary injunction filed therewith, he prayed that the defendant postmaster be restrained from extending "to any other citizen of Dallas" any more delivery service than was extended to the plaintiff, and that the defendant be mandatorily directed to furnish the plaintiff the same delivery service that is furnished "in any other business area of the City of Dallas".

This prayer, it will be observed was not for preservation of an existing status, but for an order mandatorily directing a radical change in the existing status.

Cases on this point are legion. We cite a few in the margin.[5]

Further, if the suit was not a suit against the United States as such, it still was one seeking a decree to control the actions of the Postmaster General. That officer was therefore an indispensable party and suit could not properly proceed without his presence.

Where the decree which is sought would effectively grant the relief desired by expending itself on the subordinate officer who is before the court, this court has without varying[6] maintained the right of the citizen to obtain relief from oppressive actions of a subordinate officer done or threatened in violation of legal rights without requiring that his superior be made a party.

It has never held, in the face of the controlling authorities it could not hold, in a situation of the kind this evidence discloses, that a court had jurisdiction to direct or control the policies of the United States by suit against an official. Such a suit, though in form a suit against an individual, would in fact be a suit against the United States and could not be maintained without its consent. It has never held, it could not hold, in regard to matters confided to the discretion of the superior where the relief sought would require him to take action either by exercising directly power lodged in him or by having a subordinate exercise it for him, that a suit can be maintained, to control or direct action in such matters, against a subordinate alone without making the superior a party. The suit, if not a suit against the United States, as we think it is, is certainly a suit requiring the presence as an indispensable party of the Postmaster General, and it could not have been properly maintained without him.

The judgments appealed from were erroneously entered. They are reversed and the cause is remanded with direction to dismiss the suit for want of jurisdiction.

5. Brunswick v. Elliott, 70 App.D.C. 45, 103 F.2d 746; Adams v. Nagel, 303 U.S. 532, 58 S.Ct. 687, 82 L.Ed. 999; Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 23 S.Ct. 698, 47 L.Ed. 1074; T. W. A. v. Farley, Postmaster General, 2 Cir., 71 F.2d 288.

6. Authorities note 1, supra.