# PACIFIC LEGAL FOUNDATION

v.

## Jere E. GOYAN.

### Civ. No. Y–79–2243.

United States District Court, D. Maryland.

Nov. 5, 1980.

Paul H. Chappell, Chevy Chase, Md., Ronald A. Zumbrun, Sacramento, Cal., Raymond M. Momboisse and Eileen B. White, Washington, D. C., for plaintiff.

Alice Daniel, Asst. Atty. Gen., Ann F. Cohen and Lewis K. Wise, Washington, D. C., U. S. Dept. of Justice, Russell T. Baker, Jr., U. S. Atty., and John F. Hyland, Jr., Asst. U. S. Atty., Baltimore, Md., for defendant.

Nancy L. Buc and Edward M. Basile, Rockville, Md., Food and Drug Administration–Dept. of Health, Education and Welfare, of counsel.

JOSEPH H. YOUNG, District Judge.

This action was brought by the Pacific Legal Foundation (PLF) seeking declaratory and injunctive relief in order to invalidate a new Food and Drug Administration (FDA) program providing federal funds to reimburse persons for their expenses incurred in participating in certain FDA proceedings. The plaintiff has filed a motion for summary judgment and the defendant has filed a motion to dismiss, or in the alternative, for summary judgment. The case was originally assigned to Judge Thomsen who had scheduled a hearing before discovering he had a conflict. There are no genuine issues as to any material facts and the case can be disposed of on summary judgment.

## FACTS

On August 25, 1976, FDA issued an advance notice of proposed rulemaking concerning agency payment to participants in administrative proceedings (41 Fed.Reg. 35855). In that notice, the agency set forth a petition submitted by Consumers Union containing a specific proposal to provide reimbursement for attorneys' fees, expert witness fees and other reasonable costs incurred by public participants in certain FDA administrative proceedings. On April 17, 1979, the FDA issued its proposed rule. (44 Fed.Reg. 23044). On October 12, 1979, the FDA published its final rule establishing this program. (44 Fed.Reg. 59174).

The rule established a demonstration program whose purpose is to determine whether FDA's administrative decisionmaking will be enhanced by reimbursing participants in many different types of FDA proceedings. The rule sets out criteria and procedures for an evaluation board to authorize the reimbursement of participants for reasonable attorneys' fees, expert witness fees, clerical services, travel, studies, demonstrations and other costs in certain administrative proceedings that result in a hearing. FDA allocated up to $250,000 for this demonstration program. (44 Fed.Reg. 59177).

PLF filed comments in response to FDA's advance notice of proposed rulemaking in 1976 and, again, in 1979, in response to the issuance of the proposed rule. PLF has objected to the rule on the basis of a number of allegations including: the FDA's lack of express statutory authority to spend federal funds in this manner; the programs's potential waste of government resources; and, the biased effect the program would have on the record in FDA proceedings. PLF participates frequently in FDA proceedings but has not applied for funds available under this program.

## LEGAL DISCUSSION

### Justiciability

█ The FDA has asserted that this case is non–justiciable because PLF lacks standing in its associational capacity, or as representative of citizens and taxpayers. Fur-

thermore, the FDA asserts that to the extent PLF may be injured by this new program, such injury has not yet occurred and plaintiff's case is not ripe. An examination of the controversy presented by this case, in light of the existing legal standards concerning justiciability, reveals that the plaintiff in this action has alleged a sufficient personal stake to justify granting standing. The issue of ripeness is also considered insufficient to prevent the Court from reaching an adjudication on the merits.

The Supreme Court has addressed the question of standing from the point of constitutional limitations arising from the Article III requirement of a "case or controversy" and the prudential principles by which the judiciary confines itself to cases considered well–suited to the exercise of the judicial power. The Court has summarized the doctrine of standing as follows:

"In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues. This inquiry involves both constitutional limitations on federal–court jurisdiction and prudential limitations on its exercise. . . . In both dimensions it is founded in concern about the proper–and properly limited–role of the courts in a democratic society." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 2204, 45 L.Ed.2d 343 (1975).

The Court has interpreted the constitutional limits on standing to eliminate claims in which the plaintiff fails to make out a case or controversy between himself and the defendant. *Gladstone v. Village of Bellwood*, 441 U.S. 91, 99 S.Ct. 1601, 1608, 60 L.Ed.2d 66 (1979). In that case, the Court cited a line of standing cases for the proposition that:

"In order to satisfy Art. III, the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." 441 U.S. at 99, 99 S.Ct. at 1608.

The Court went on to explain that these constitutional limitations upon the standing of litigants were only the first step in a proper standing analysis:

"Even when a case falls within these constitutional boundaries, a plaintiff may still lack standing under the prudential principles by which the judiciary seeks to avoid deciding questions of broad social import where no individual rights would be vindicated and to limit access to the federal courts to those litigants best suited to assert a particular claim." 441 U.S. at 99–100, 99 S.Ct. at 1608.

Thus, the issue of the standing of PLF must be addressed in terms of both constitutional limitations and prudential considerations.

■ As standing is being challenged largely on the basis of the pleadings, it is appropriate to accept as true all material allegations of the complaint and to construe the complaint in favor of the complaining party. *Warth v. Seldin*, 422 U.S. at 500, 95 S.Ct. 2205.

■ An association seeking to bring an action in federal court may assert standing on its own behalf or on behalf of its members. *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343, 97 S.Ct. 2434, 2441, 53 L.Ed.2d 383 (1977). PLF makes clear in its Memorandum Opposing Defendant's Motion to Dismiss or, in the Alternative, for Summary Judgment that "PLF asserts injury in its own right." (p. 6, n.7.) Therefore, the consideration of whether PLF possesses adequate standing to maintain this action should be based on the position of the association, itself, as plaintiff.

The injuries which PLF alleges it will suffer as a result of the FDA program are both economic and institutional. PLF asserts that it will be injured financially because the length of FDA proceedings will increase in order to comply with the new reimbursement procedures and PLF's costs will therefore also increase. In addition, PLF alleges that it will be faced with the added costs of monitoring the procedures for determining what person or group is eligible for reimbursement in a particular proceeding. The record reveals that PLF has participated in numerous FDA proceed-

ings to this date and if it is to maintain its institutional presence in these proceedings it is quite possible that it will suffer increased costs as a result of the new reimbursement procedures. While the extent of this injury is difficult to predict, that does not prevent PLF from maintaining standing. The Supreme Court has rejected any attempt to limit standing to those who have been "significantly" affected by agency action and has indicated that "an identifiable trifle" can be enough for standing. *United States v. SCRAP*, 412 U.S. 669, 689 n.14, 93 S.Ct. 2405, 2417 n.14, 37 L.Ed.2d 254 (1973). Since the plaintiff in this case has alleged "injury in fact" at least equal to that found sufficient to confer standing in previous Supreme Court decisions, there seems to be no reason to deny PLF standing to raise these important legal issues.

It is also significant that FDA regulations provide for judicial review of final agency action by persons who have submitted comments or objection in administrative proceedings. 21 C.F.R. § 10.-45(d)(a)(ii) provides that "Any interested person is affected by, and thus has standing to obtain judicial review of, such final agency action." Interested person is defined in 21 C.F.R. § 10.3(12) which provides: " 'Interested person' or 'any person who will be adversely affected' means any person who submits a petition or comment or objection or otherwise requests an opportunity to participate in any informal or formal administrative proceeding or court action." The FDA has attempted to argue that 21 C.F.R. § 10.45(d)(1)(ii) is inapplicable because here the challenge is not to a FDA rule "directly affecting all members of the public" but rather to a rule concerning FDA's administrative practice and procedure. Such an argument is unpersuasive. In adopting the rule at issue, the FDA expressed the hope that "increased diversity in the views presented to the agency is likely to lead to more sensitive, better informed, more effective, and wiser decisions." (44 Fed.Reg. 59174). It seems clear that such improved decisionmaking directly affects all members of the public and that PLF is qualified as an "interested person" to challenge the rule

at issue. *See Reade v. Ewing*, 205 F.2d 630 (2d Cir. 1953).

It is, of course, true that not even Congress can confer standing on a party that does not satisfy "the Article III minima." *Gladstone v. Village of Bellwood, supra*, 441 U.S. at 100, 99 S.Ct. at 1608. However, the plaintiff in this case has been shown to meet both the constitutional and prudential requirements for standing in the federal courts and this Court is convinced that PLF is an appropriate party to challenge the FDA rule.

■ As for the issue of ripeness, this Court can see no benefit to be gained from delaying judicial review of the FDA reimbursement program. Like standing, ripeness doctrine is drawn both from Article III limitations on judicial power and discretionary reasons of policy for refusing to exercise existing power. Wright, Miller and Cooper, *Federal Practice and Procedure* § 3532 at 237–38. The cases do not set forth any clear rule of easy applicability but the Court has formulated a test of considering the suitability of the issues for present review and the hardship of withholding review. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 149, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). In the present case, the issues are certainly ripe for review as they focus mainly on the authority of the FDA to spend government funds in the manner envisioned by the reimbursement program. Also in favor of review at this point is the fact that once these funds are expended under the reimbursement program, there is no practical means of retrieving the money if such expenditures are determined to be unlawful. Any other injuries resulting from the program would also be largely irreversible. Finally, the fact that this case is presently before this Court on cross–motions for summary judgment indicates the issues of law being presented are clearly ripe for judicial review. *Abbott Laboratories v. Gardner, supra*.

*Merits*

■ The question of law presented by the cross–motions for summary judgment is

whether the FDA by promulgating a final rule providing reimbursement to participants in its proceedings is spending federal funds without the required congressional authorization. For the reasons set forth below, this Court concludes that the FDA has acted in a lawful manner in this matter under the authority granted by Congress, and that there is no reason to invalidate a program which helps to further the statutory mandate of the FDA.

The power to dispose of federal funds is reserved for Congress by Article IV, § 3, Clause 2 of the Constitution. However, Congress has the authority to delegate that spending power to officers of the United States. *Wayman v. Southard*, 10 Wheat. (23 U.S.) 1, 6 L.Ed.2d 253 (1825). The plaintiff here alleges that the FDA has not been specifically authorized by Congress to spend federal funds for a reimbursement program and therefore lacks the authority to disburse those funds under 31 U.S.C. § 665(a).* Furthermore, the plaintiff alleges that any such expenditure is in violation of 31 U.S.C. § 628, which provides that all sums appropriated shall be applied solely to the objects for which they are respectively made, and for no others. The arguments of the plaintiff are unpersuasive, however, in light of the statutory mandate of the FDA, and the Congressional approval of such expenditures by the FDA.

The FDA has broad regulatory powers under the Federal Food, Drug, and Cosmetic Act. 21 U.S.C. § 301 *et seq.*. As part of its regulation of the many products subject to its jurisdiction, the FDA is often required to hold hearings and to base its decisions concerning the products it regulates solely on the record developed in those hearings. *See, e. g.*, 21 U.S.C. § 344(b); § 348(f); § 355(d), (e); § 360b(d), (e); § 360e(g); and § 371(e)(1). The FDA is also authorized "to promulgate regulations for the efficient enforcement of" the Act. 21 U.S.C. § 371(a). In order to carry out these statutory mandates, the FDA established the reimbursement program which it believed would enhance the efficiency and quality of its administrative proceedings by providing for a greater diversity of views. The FDA believed that such a program was fully supported by the statutes under which it operates, and an agency's interpretation of its own statute is entitled to significant weight. The Supreme Court has reminded us on more than one occasion that, "we must be mindful that 'the construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong....'" *Beal v. Doe*, 432 U.S. 438, 447, 97 S.Ct. 2366, 2372, 53 L.Ed.2d 464 (1977), quoting *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 421, 93 S.Ct. 2507, 2516, 37 L.Ed.2d 688 (1973), which had quoted *Red Lion Broadcasting Co. v. F.C.C.*, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

It is, of course, true that "the authority of a Commission to disburse funds must come from Congress." *Greene County Planning Board v. Federal Power Commission*, 559 F.2d 1227 (2d Cir. 1977) (*en banc*), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1280, 55 L.Ed.2d 791 (1978); *Turner v. F.C.C.*, 169 U.S.App.D.C. 113, 514 F.2d 1354, 1356 (1975). Congress originally granted such authority in the enabling acts under which the FDA operates. When the FDA determined that the allocation of funds for reimbursement "is justified by the new and different information and perspectives that public participation, as opposed to additional agency effort, might provide," (44 Fed. Reg. 59176), it was acting under the authority that had been granted to it by Congress. Furthermore, Congress knew of this specific expenditure and expressly authorized it. In appropriating funds for both 1979 and 1980,

---

* 31 U.S.C. § 665(a) provides:

    No officer or employee of the United States shall make or authorize an expenditure from or create or authorize an obligation under any appropriation or fund in excess of the amount available therein; nor shall any such officer or employee involve the Government in any contract or other obligation, for the payment of money for any purpose, in advance, of appropriations made for such purpose, unless such contract or obligation is authorized by law.

Congress authorized the expenditure of funds "for necessary expenses, not otherwise provided for, of the Food and Drug Administration." Agriculture, Rural Development, and Related Agencies Bill, P.L. 95–448 (1978). The legislative history of those two bills makes evident that Congress contemplated that funds would be expended by the FDA for a reimbursement program. The House–Senate Conference Committee Report on FDA's 1979 budget specified that such a program was to be operated only after the agency had promulgated regulations complying with the Comptroller General's rulings on the matter and set forth additional requirements. H.Rep.95–1579, 95th Cong., 2d Sess. 29 (1978). The House of Representatives' Appropriations Committee Report on FDA's 1980 appropriations bill also recognized the FDA's involvement with a reimbursement scheme for public participants. H.Rep.96–242, 96th Cong., 1st Sess. 29–30 (1979). The plaintiff attempts to counter this obvious Congressional awareness of the FDA's actions in this area with the fact that, in 1977, Congress failed to enact three bills which proposed to grant to all federal agencies authority to reimburse voluntary participants in their administrative proceedings. S. 270, H.R.3361, and H.R.3362. The defendant replies with possible alternative inferences to be drawn from such Congressional inaction. However, this Court is not prepared to venture into such speculation in either direction on the basis of such inconclusive legislative inaction. Reliable conclusions as to congressional intent cannot be drawn from the failure of Congress to enact legislation. *United States v. South–Eastern Underwriters Association*, 322 U.S. 533, 560–61, 64 S.Ct. 1162, 1177–78, 88 L.Ed. 1440 (1944).

The assertion of plaintiff that the legislative history and the language of the appropriations bills are insufficient to provide authorization for the reimbursement program ignores the importance of the statutory mandate under which the FDA functions. The plaintiff relies too heavily upon the technical distinctions between authorizing legislation and appropriations bills. The Supreme Court has recognized the difference between those two types of Congressional actions. *Andrus v. Sierra Club*, 442 U.S. 347, 359 n.18, 99 S.Ct. 2335, 2342, n.18, 60 L.Ed.2d 943 (1979). However, the Court has not held that each program promulgated by an agency must have a specific, express piece of authorizing legislation before it can be implemented. The plaintiff has cited *Tennessee Valley Authority v. Hill*, 437 U.S. 153, 194, 98 S.Ct. 2279, 2301, 57 L.Ed.2d 117 (1978) for the proposition that appropriations bills have the limited purpose of providing funds for programs previously established by authorizing legislation. However, that case involved an attempt to draw inferences from appropriations measures that were in direct contravention to the statutory mandate of the Endangered Species Act. The present case would be quite different if Congress had passed a law prohibiting reimbursement programs such as the one promulgated by the FDA rule. However, Congress has passed no such law but rather has given the FDA broad statutory authority to carry out its duties, and has authorized the expenditure of funds for "necessary expenses." Numerous courts have held that federal agencies have implied powers to expand funds and make other efforts to meet their statutory responsibilities. *Pan American World Airways v. United States*, 371 U.S. 296, 311–13, 83 S.Ct. 476, 485–86, 9 L.Ed.2d 325 (1963); *United States v. Pennsylvania*, 323 U.S. 612, 615–16, 65 S.Ct. 471, 473, 89 L.Ed. 499 (1945); *Niagra Mohawk Paper Corp. v. Federal Power Commission*, 379 F.2d 153, 158 (D.C.Cir.1967); *Lehigh & New England Railroad Co. v. I.C.C.*, 540 F.2d 71, 78–79 (3d Cir. 1976), *cert. denied*, 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977). The Court of Appeals for the District of Columbia, in *Niagra Mohawk, supra*, held that the FPC had the power to issue project licenses with an effective date earlier than the date of issuance, even though not expressly authorized by the statute. The Court reasoned:

> The Act is not to be given a tight reading wherein every action of the Commission is justified only if referable to express

statutory authorization. On the contrary, the Act is one that entrusts a broad subject–matter to administration by the Commission, subject to Congressional oversight, in light of new and evolving problems and doctrines.... While [the] "necessary or appropriate" provisions [of the Federal Power Act] do not have the same majesty and breadth in statutes as in a constitution, there is no dearth of decisions making clear that they are not restricted to procedural minutae, and that they authorize an agency to use means of regulation not spelled out in detail, provided the agency's action conforms with the purposes and policies of Congress and does not contravene any terms of the Act. 379 F.2d at 158.

Similarly, the FDA has been given broad statutory powers and its actions in promulgating a rule providing for a reimbursement program for public participants does not contravene that mandate but rather helps to further its efficient enforcement.

The plaintiff relies heavily upon the decision in *Greene County Planning Board, supra,* where the Court upheld the FPC's denial of a request for reimbursement to intervenors who had successfully urged the selection in an FPC proceeding of an alternative route for a power line. However, the holding of that Court does not compel a result different from that reached in the present case. The Court, in *Greene,* relied upon Supreme Court decisions such as *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 47 (1975), which had refused to upset the "American Rule" preventing fee shifting between private litigants. 559 F.2d at 1239. However, the present case does not involve fee shifting between private litigants or even fee reimbursement based upon ultimate success. Rather, the program being challenged is designed to help bring into FDA proceedings public participants whose views are believed necessary and which might not otherwise be made available. The reimbursements will be made only after an agency determination, based upon explicit standards, that such reimbursements are appropriate under

the circumstances of the proceedings. The Court, in *Greene,* held that the FPC's own interpretation of the Federal Power Act on the issue of authorization of the award of counsel fees was entitled to great deference. 559 F.2d at 1239 n.2. While the FPC had never deemed itself authorized to pay the legal fees of private litigants, the FDA has strenuously urged the legality and appropriateness of its new reimbursement program, a position that is bolstered by the interpretations given to the Act by the Comptroller General. "Costs of Intervention–Food and Drug Administration," No. B–139703 (December 3, 1976). The opinions of the Comptroller General are admittedly not binding legal opinions beyond the review of the judiciary. *United States ex rel. Brookfield Construction Co. v. Stewart,* 234 F.Supp. 94, 100 (D.D.C.), aff'd, 339 F.2d 753 (D.C.Cir.1964). However, such decisions are entitled to more than just cursory consideration, particularly within a context where it appears that his views have been brought to the attention of Congress. *Brunswick v. Elliott,* 103 F.2d 746, 749 (D.C.Cir.1939). The decision that the FDA is authorized to promulgate a rule providing for reimbursement to public participants in FDA proceedings is supported by the holding of *Chamber of Commerce v. United States Department of Agriculture,* 459 F.Supp. 216 (D.D.C. 1978). In that case, the Court refused to enjoin the expenditure of federal funds for a study to be provided to the Department by a public interest group. The plaintiffs in that case argued that, in the absence of specific legislation, the Department was prevented from subsidizing any person's participation in rulemaking, citing *Greene* for authority. However, the Court distinguished *Greene* and held that the Department had "the implied power voluntarily to fund the views of parties whose petition might otherwise go unrepresented." 459 F.Supp. at 221. The plaintiff's attempt to distinguish *Chamber of Commerce* on the basis that a consultant who provides a study for use in a rulemaking represents the interests of the Department while a participant owes no such duty misrepre-

sents the facts of *Chamber of Commerce.* The consultant hired to perform the study in that case was a public interest group and the Court explicitly found that the Department had "made significant efforts to obtain and fund the views of a consumer–oriented group." 459 F.Supp. at 219. Furthermore, to the extent that any participant in public proceedings serves to increase the diversity of views available to the agency, it represents the interests of that agency. The FDA program is designed to bring in "new and different information and perspectives that public participation, as opposed to additional agency effort, might provide." (44 Fed.Reg. 59176). It is expected that this information would include not only the views of consumers, but the views of small businesses as well. (44 Fed. Reg. 59175). As such, the FDA rule is fully authorized by the statutory mandate contained in the Food, Drug and Cosmetic Act and this Court can find no reason to prevent the expenditure of federal funds "necessary" for the development and implementation of this demonstration program aimed at enhancing the administrative decision-making of the FDA.

Accordingly, it is this 5th day of November, 1980, by the United States District Court for the District of Maryland, ORDERED:

1. That the plaintiff's motion for summary judgment be, and the same is, hereby DENIED;

2. That the defendant's motion to dismiss be, and the same is, hereby DENIED;

3. That the defendant's motion , in the alternative, for summary judgment be, and the same is, hereby GRANTED.

4. That a copy of this Memorandum and Order be sent to attorneys for all parties involved and to the United States Attorney for the District of Maryland.